JOHANNA G. FENNELL *vs.* CHARLES H. RUSSELL & another.

Middlesex.    January 12, 23, 1933. — February 15, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Parent and Child.    Contract,* Implied.

A judge hearing a suit in equity upon the report of a master is entitled to draw his own inferences of fact from the subsidiary facts found by the master, especially where the master has stated in his report that nothing in the attitude or personal appearance of the witnesses affected his findings; and, upon appeal from a final decree entered by order of the judge, this court stand in the same position as did the judge and must draw their own inferences from the facts found.

In a suit in equity by an aunt of the defendant's wife to establish a claim for necessaries supplied to a minor son of the defendant over a period of about twelve years, it was found that, after the death of the defendant's wife, the plaintiff wished to have the boy and he was left in her custody, and it was agreed that the defendant would pay the plaintiff $5 per week; that a few weeks later the defendant lost his position and told the plaintiff that he no longer could make his payments and that he would have to place the boy in a public institution; that the plaintiff then insisted on keeping and caring for the boy herself, was ready to bring him up regardless of the defendant's financial condition and actually did so for the remainder of the period of twelve years, although

she made no express promise to relieve the defendant of further responsibility for the boy's support; and that the defendant, over most of that period, was unable to support the child. A final decree was entered dismissing the bill. *Held*, that

(1) A conclusion was proper that the express agreement requiring the defendant to pay the plaintiff $5 per week was terminated at the conference which occurred at the time when the defendant lost his position;

(2) No implied promise by the defendant to pay for necessaries supplied to the boy arose from the defendant's legal obligation to support him, if the plaintiff furnished the necessaries without reliance upon such obligation in such circumstances that the defendant reasonably understood that he was not being expected to compensate her therefor;

(3) A conclusion was warranted that the plaintiff furnished the necessaries on that basis;

(4) Although the plaintiff was entitled to refuse to continue on that basis and thereby the obligation of the defendant as to further support of his son would revive, she could not by such refusal revive the defendant's obligation to compensate her for support previously furnished;

(5) The decree was proper.

BILL IN EQUITY, filed in the Superior Court on January 5, 1932, against Charles H. Russell and C. Harold Porter.

The plaintiff sought to establish a claim against the defendant Russell for board and lodging of that defendant's minor son at $5 per week from September 22, 1918, to December 28, 1931, for clothing supplied to the child over that period and for certain medical expenses of the child, less certain credits; and to reach and apply to the satisfaction of such claim that defendant's interest in a trust under the will of his father, of which the defendant Porter was trustee.

The suit was referred to a master. Material findings by the master are stated in the opinion. The suit thereafter was heard by *Gray*, J., who stated: "The master's finding that the specific agreement to pay $5 per week toward the support of the child was terminated at the conference in 1919 is warranted by the findings of fact on which it is based. The facts . . . require the conclusion that . . . there was no implied agreement on the father's part to pay for the support of the child. . . . From 1919 until the father inherited from his father's estate in 1929 there was no

change in the situation. The facts found by the master do not require a different conclusion than that rendered by him that the father was under no liability for support of the child after that date. I find no express or implied contract. . . ."

By order of the judge there were entered an interlocutory decree confirming the master's report "except as to conclusions of law"; and a final decree dismissing the bill. The parties filed a stipulation, pending appeal, as to payments to be made by the defendant trustee. By order of the judge an interlocutory decree was entered modifying the stipulation and a restraining order previously entered. The plaintiff appealed from the second interlocutory decree and from the final decree.

*W. E. Bennett,* for the plaintiff.

*E. J. Campbell,* for the defendants.

WAIT, J. The plaintiff sought to reach the interest of the defendant Russell in a fund held by the defendant Porter as trustee under the will of Russell's father, and to apply it in payment of a claim for necessaries supplied by her to a child of Russell's. A master reported material facts as follows: The plaintiff was the aunt of the child's mother. She brought up the mother, was very fond of her, and was besought by her at her death to take the child and bring him up as her own son. After the mother's death the father and infant child lived for a time with the plaintiff who was paid for board and lodging, but some time in May, 1919, the father went away to Boston to go upon the police force there. About the time of the mother's funeral, the father and plaintiff had discussed what to do with the child. The father suggested that his mother, the child's grandmother, was able and willing to take it, but the plaintiff wished them to live with her so that she could take care of the baby. She may not have said so, but she would gladly have undertaken care and custody of the child without expectation of contribution from the father toward necessary expenses. In May, 1919, she and the father conversed about the child. She said she must have $5 per week for the child's board and lodging. This the father agreed to pay; and while on the police force

of Boston did pay. In the eighth week, the father lost his position, and told the plaintiff he could not pay longer and must put the baby in the Harrison Avenue home for destitute Catholic children. The plaintiff disliked the plan, and insisted upon keeping and caring for the child herself. The father was in search of work and unable at the time to support the child, as the plaintiff knew; and, although she made no promise to relieve the father of further responsibility financially for its support, she was ready to keep it in her home and bring it up without regard to the father's financial condition; "and this is what she actually did for a period of twelve years." The father left Massachusetts, engaging in various occupations in various places, was "almost constantly on the move," most of the time outside the State, and, although he regarded Brockton as his home, his domicil from 1919 to the filing of this bill in 1932 was outside the Commonwealth. He married again about 1922. Up to 1929 he was financially unable to support the child. In August of 1929 his father, John Russell, died, testate, leaving a will under which he became beneficiary of a trust which yielded about $800 a year for him and about $400 a year for his minor son. The plaintiff secured appointment as guardian of the minor so that she should receive payments due to the minor. The father consented to the appointment.

In September, 1930, the plaintiff learned that the father was trying to borrow on his interest under the grandfather's will. She brought suit and attached the interest. In that action she made no claim for support furnished the minor from 1919, but sought to obtain the entire amount of income then due the defendant and an agreement to pay $5 per week thereafter. The agreement was not reached; but practically the whole income under attachment was paid over to her and the suit was dismissed. Letters from the father disclosed his hope that he might upset the grandfather's will, and contained statements that, if he had received his share of the estate outright, he would have paid her a substantial sum for what she had done for the boy. The master inferred and found that the agreement of 1919 to pay $5 per week was terminated at the conference after

the father's discharge as a policeman. He reported that nothing in the attitude or personal appearance of the witnesses affected his findings; and he made alternative findings appropriate to varying contentions regarding applicable law.

The judge confirmed the report and a supplementary report, but found that the agreement for $5 per week was terminated, and that no express or implied contract for payment had been made. In consequence he ordered that the bill be dismissed. The plaintiff contends that the findings are not supported by the facts of the report and legitimate inferences therefrom.

The trial judge, especially where, as here, the appearance of witnesses did not affect the master's findings, was at liberty to draw his own inferences from the facts reported with the subsidiary facts on which the master's inferences were based. We cannot properly find him in error. He stands with reference to the facts found by the master in the same position as this court with reference to the record before us. We are bound to draw our own inferences and to reach our own decision on the facts. *Nichols* v. *Atherton,* 250 Mass. 215, 217, and cases cited. We think the finding that the express agreement of May, 1919, was terminated with the father's discharge and the transaction which followed is sound.

The father was bound to support the child. The law implies a promise by him, based upon this obligation, to pay for necessaries furnished the child, *Whipple* v. *Dow,* 2 Mass. 415, *Dennis* v. *Clark,* 2 Cush. 347, *Lamson* v. *Varnum* 171 Mass. 237; but where support is furnished without reliance upon the parent's obligation under such circumstances that the parent reasonably understands that he is not being expected to compensate therefor, no implication of promise to pay arises. *Dodge* v. *Adams,* 19 Pick. 429, 432. See for collection of cases 46 C. J. 1266, note 27. Compare *Lyons* v. *Jackson,* 232 Mass. 275. Undoubtedly the person so furnishing the support is free at any time to refuse to go on further; and thereupon the parent's duty to support, previously in abeyance, will revive, and, with

it, the implied promise of payment for future support. The facts reported justify findings that the plaintiff cared for and supported the child because she did not wish it to be left dependent upon such care and support as the father could furnish, so doing without reliance upon any implied promise by the father to contribute to its support; and that the father permitted it to remain with her, understanding that no claim of a legal right to compensation would be made. The statements in his letters may well be taken to be grateful acknowledgments of a moral obligation rather than recognitions of legal liability. One who has undertaken unaided support of a child cannot, by putting an end to the undertaking, bring to life an obligation on the parent's part to compensate for support previously furnished. Whether misconduct on the part of the parent might produce a different situation we need not consider. Compare *Taylor* v. *Deseve,* 81 Texas, 246.

Discussion of the modification made in the stipulation pending appeal is unnecessary in view of our decision. Neither the statute of limitations nor the statute of frauds furnishes a defence. The bill was dismissed properly because neither an express nor an implied promise to compensate is made out.

*Decree affirmed.*