COMMONWEALTH vs. DANIEL MACKENZIE.

Bristol. January 8, 1975. — September 22, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Constitutional Law,* Equal protection of laws. *Bastardy.*

G. L. c. 273, § 11, imposing a criminal sanction on "[w]hoever, not being the husband of a woman, gets her with child," discloses no permissible legislative goal for imposing the sanction on the father, but not on the mother, for the act of begetting, and violates constitutional provisions respecting equal protection of the laws. [611-616]

To the extent that proceedings under G. L. c. 273, § 11, are used to establish paternity of an illegitimate child and to oblige its father to contribute to the mother's pregnancy and childbirth expenses and support of the child, the statute reflects significant circumstantial differences between the father and the mother, and no violation of constitutional provisions respecting equal protection of the laws appears [617-619]; BRAUCHER, J., concurring in the result [619].

COMPLAINT received and sworn to in the Fourth District Court of Bristol on October 12, 1971.

On appeal to the Superior Court the case was tried before *Faraci,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Abbott L. Reichlin* for the defendant.

*Louis J. Ostric,* Special Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant was found guilty under G. L. c. 273, § 11, which provides that "Whoever, not being the husband of a woman, gets her with child shall be guilty of a misdemeanor."   Prior to the trial he moved to dismiss the complaint on the ground that G. L. c. 273, § 11, "on its face" denies the defendant equal protection of the laws guaranteed by arts. 1 and 10 of the Declaration of Rights of the Massachusetts Constitution and by the Fourteenth Amendment to the Constitution of the United States.   The motion to dismiss asserted that § 11 imposes criminal sanctions on a man found guilty of fathering a child out of wedlock, but not on the woman who is the mother of the same child.   The motion to dismiss was denied.   The defendant was sentenced to three months in a house of correction, suspended for six years, with probation conditioned on his payment of weekly amounts to support the child and to satisfy the confinement expenses.   The defendant argues here only his exception to the denial of his motion to dismiss.   We ordered the case transferred here from the Appeals Court.

Relying on traditional equal protection standards, the defendant contends that the distinction made by § 11 denies equal protection of the laws because it is not substantially and rationally related to a permissible legislative purpose.   Furthermore, he argues that, even if there were a valid legislative purpose for the distinction, any sex-based classification would be inherently suspect and could be upheld only if necessary to achieve a compelling State interest.   From this, the defendant asserts that there is no compelling State interest in distinguishing between males and females in assigning criminal responsibility for conceiving a child out of wedlock.

Since 1913 the statutes of the Commonwealth have expressed in a criminal context a father's responsibility for fathering an illegitimate child.   St. 1913, c. 563.   As to

the father, the statute "makes the begetting of an illegitimate child a misdemeanor, and the non-support of such child a distinct and continuing offence.   It utilizes the probation collection system, incidental to criminal proceedings; and adopts the practice of the uniform desertion act . . . [see now G. L. c. 273, §§ 1-10], so far as it is applicable." *Commonwealth* v. *Dornes,* 239 Mass. 592, 594 (1921).  See G. L. c. 273, § 16.

The Commonwealth argues that in practice § 11 is used only (a) to determine the paternity of the child, (b) to impose on the father the obligation to contribute toward the expenses of the pregnancy and of the confinement (see G. L. c. 273, § 13), and (c) to establish or enforce the father's obligation to share in the support of the child.   See *Commonwealth* v. *Baxter,* 267 Mass. 591, 595 (1929); Lombard, Family Law, § 453, p. 437, and § 474, p. 469 (1967).   The Commonwealth recognizes that the father may receive a suspended sentence which is subject to revocation for failure to comply with the court's orders, but claims that, because § 11 is merely a paternity and support statute, the distinction between fathers and mothers is rational and permissible.

The judicial scrutiny required in cases involving distinctions based solely on sex is stricter than that required under traditional equal protection standards.   The application of this stricter standard of review has led the Supreme Court to reject many sex-based classifications.[1]   A sex-based classification "must rest upon some ground of difference having a fair and substantial relation to the

---

[1] See *Reed* v. *Reed,* 404 U. S. 71 (1971) (statutory preference for men over women otherwise equally qualified to administer decedents' estates); *Stanley* v. *Illinois,* 405 U. S. 645 (1972) (statute denying father, but not mother, of illegitimate child hearing before loss of custody); *Frontiero* v. *Richardson,* 411 U. S. 677 (1973) (statute granting married servicemen, but not married servicewomen, automatic dependency allowances for spouses); *Taylor* v. *Louisiana,* 419 U. S. 522 (1975) (automatic exemption of women from jury duty in the absence of a request to serve); *Weinberger* v. *Wiesenfeld,* 420 U. S. 636 (1975) (statutory grant of Social Security benefits to widows,

object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Reed* v. *Reed,* 404 U. S. 71, 76 (1971), quoting from *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415 (1920).[2]

Judging § 11 by this standard, we discern no permissible legislative goal which rationally is achieved by making a father, but not a mother, guilty of conceiving a child out of wedlock. The statutory purposes advanced by the Commonwealth support a paternity and child support statute, but not a criminal sanction directed solely against the father and addressed expressly to the act of begetting. We are aware of no other possible justification for the distinction in § 11 between men and women in a criminal context which would satisfy the appropriate equal protection test. The imposition of a criminal sentence on the father alone for begetting the child violates the equal protection of the laws.[3]

---

but not widowers, with children); *Stanton* v. *Stanton,* 421 U. S. 7 (1975) (different age of majority for boys and girls).

In several cases, the Supreme Court has upheld sexual classifications judged by the same standard of review, because the classifications rested on substantial differences in the position of men and women with relation to the subject matter of the statutes in question. Thus in *Kahn* v. *Shevin,* 416 U. S. 351, 355-356 (1974) (property tax exemption for widows but not widowers), *Geduldig* v. *Aiello,* 417 U. S. 484, 496-497 (1974) (exclusion of pregnancy from State employment disability system), and *Schlesinger* v. *Ballard,* 419 U. S. 498, 508 (1975) (longer tenure for female line officers in the Navy before mandatory discharge in the absence of promotion), the court found that the classifications challenged as sexually discriminatory were in fact based on functional or circumstantial differences between the sexes, and therefore no violation of equal protection existed.

[2] Four Justices of the Supreme Court would apply an even stricter scrutiny in cases challenging classifications based on sex, but that court has not adopted that as the appropriate test. See *Frontiero* v. *Richardson, supra.*

[3] There is substantial authority for the proposition that criminal statutes may not differentiate between men and women for the purpose of defining a criminal penalty. *Lamb* v. *Brown,* 456 F. 2d 18, 20 (10th Cir. 1972) (different ages of majority for boys and girls, after which each may be tried as an adult); *Ex Parte Matthews,* 488 S. W. 2d 434, 438 (Texas Crim. App. 1973) (accord); *Commonwealth*

Although this criminal aspect of § 11 cannot survive constitutional challenge, § 11 is not similarly defective to the extent that it is used to establish paternity and oblige the father to contribute toward pregnancy and childbirth expenses. Because of significant circumstantial differences between unwed fathers and unwed mothers, it is permissible for the Legislature to focus statutory attention exclusively on the fathers of illegitimate children. Our paternity statutes were enacted to deal with the problem of defaulting fathers. *Commonwealth* v. *Dornes*, 239 Mass. 592, 594 (1921). See G. L. c. 273, § 15. There was no showing that unwed mothers presented a similar social problem. Furthermore, statutes obligating a father to support his illegitimate child eliminated a sex-based discrimination. At common law, the father of an illegitimate child had no duty to contribute to the support of his child (*Commonwealth* v. *Dornes, supra,* at 593-594), whereas the mother did have such a duty (*Commonwealth* v. *Hall,* 322 Mass. 523, 528 [1948]). In addition, because the woman carries and bears the child, the pressures of society make it nearly impossible for her successfully to deny parenthood or to avoid responsibility for the child. The father, on the other hand, because not visibly linked to the child, often is unaware of the tie or denies it, and thus the fact of his parenthood is more difficult to prove. For these reasons, defaulting fathers have posed a significant social problem, while defaulting mothers have not.

We are satisfied, then, that the paternity and child support provisions of § 11 rest on more than a sex-based

v. *Stauffer,* 214 Pa. Super. 113, 117 (1969) (different eligibility for parole for men and women); *Commonwealth* v. *Staub,* 461 Pa. 486 (1975) (larger fine for men than for women convicted of fornication); *Commonwealth* v. *Butler,* 458 Pa. 289 (1974) (different duration of sentences due to indeterminate sentencing of women); *State* v. *Chambers,* 63 N. J. 287, 294-295 (1973) (accord); *United States ex rel. Robinson* v. *York,* 281 F. Supp. 8 (D. Conn. 1968) (accord); *United States ex rel. Sumrell* v. *York,* 288 F. Supp. 955 (D. Conn. 1968) (accord).

classification. They reflect significant circumstantial differences between the fathers and the mothers of illegitimate children. Adapting the language of the Supreme Court in *Schlesinger* v. *Ballard, supra,* at 508, to these circumstances, we believe that "the different treatment of men and women . . . [under § 11] reflects, not archaic and overbroad generalizations, but, instead, the demonstrable fact that male and female . . . [parents of illegitimate children] are *not* similarly situated . . .." Thus there is no violation of equal protection in this noncriminal aspect of § 11.[4]

We conclude that the defendant's motion to dismiss the complaint was properly denied. A complaint under § 11 may be used to initiate a proceeding to adjudicate paternity. See G. L. c. 273, § 12. Such an adjudication provides a basis for an order directing the father to contribute toward pregnancy expenses (see G. L. c. 273, § 13) and the support of the child (see G. L. c. 273, §§ 15 and 16). In such proceedings, the relative obligations of the father and the mother must be determined by applying an identical standard. Here an order directing the defendant to make certain payments would have been proper. Thus the motion to dismiss the complaint was denied correctly, and the defendant's exception must be overruled.

---

[4] The defendant's challenge is expressed only in equal protection terms. He does not argue that because an adjudication of paternity may not be made "until the child is born or the court finds that the mother is at least six months pregnant" (see G. L. c. 273, § 12), and because a pregnant woman now may obtain a timely abortion as matter of right (*Roe* v. *Wade,* 410 U. S. 113, 120, 152-154 [1973]; *Doe* v. *Doe,* 365 Mass. 556, 559-564 [1974]), the pregnant woman unfairly has the power to determine whether the father's conduct will constitute a crime. This option, which could not have existed lawfully when § 11 first was enacted, presents separate constitutional questions. The defendant also has not contended that legislation which punishes the conception of a child out of wedlock is unconstitutional because it proscribes the consequences of sexual conduct of consenting adults in private. See *Commonwealth* v. *Balthazar,* 366 Mass. 298, 301, n. 2 (1974).

As we have indicated, however, a criminal conviction and sentence may not be imposed constitutionally under § 11. The sentence imposed on the defendant is invalid and should be vacated. An adjudication of paternity and an order for the payment of pregnancy expenses and support of the child may be entered in this proceeding.[5]

*So ordered.*

BRAUCHER, J. (concurring in the result). I agree with the court that there are "significant circumstantial differences between unwed fathers and unwed mothers," and that the paternity and child support provisions of G. L. c. 273, § 11, rest on more than a sex-based classification. Cf. *Commonwealth* v. *Chapman,* 2 Mass. App. Ct. 878, 879 (1974). Hence those provisions do not deny the defendant equal protection of the laws. The same differences seem to me to justify differentiation between the unwed father and the unwed mother in the imposition of criminal sentences. It seems clear, however, that it is no longer permissible to punish unnatural sexual conduct of consenting adults in private. See *Commonwealth* v. *Balthazar,* 366 Mass. 298, 301, n. 2 (1974). Punishment of natural sexual conduct and of its natural consequences must be subject to the same principle. Even though the defendant has not argued this point, therefore, I concur in the court's decision to vacate his criminal sentence.

---

[5] Any proceeding under § 11 should be treated in all respects as a criminal proceeding, just as a nonsupport proceeding is under G. L. c. 273, § 15. For example, paternity must be established beyond a reasonable doubt and the alleged father may not be compelled to testify. In light of this opinion, the Legislature may wish to review all of the Commonwealth's paternity statutes and to consider whether determinations of paternity should be made in the context of a criminal proceeding.