**Dolores WRENN o/b/o Roy Wrenn, Plaintiff,**

v.

**Patricia HARRIS, Secretary of Health and Human Services, Defendant.**

**No. CA 79–860–T.**

United States District Court, D. Massachusetts.

Dec. 18, 1980.

Stephen Wasserman, Neighborhood Legal Services, Inc., Lynn, Mass., for plaintiff.

Gregory Flynn, John D. Hanify, Asst. U. S. Attys., Boston, Mass., for defendant; Samuel C. Fish, Regional Atty., Dept. of Health, Education & Welfare, Boston, Mass., of counsel.

1. 42 U.S.C. §§ 301 et seq.

2. The parties differ on the precise sum of money contributed. Defendant characterizes Aceto's contribution as totalling about $50, while plaintiff maintains that Aceto provided $20–$30 on an erratic basis, but sometimes as often as two to three times per month.

## MEMORANDUM

TAURO, District Judge.

This is an action to review the Secretary's denial of Surviving Child's Benefits to plaintiff under the Social Security Act.[1] The specific issue raised is whether plaintiff, an illegitimate, is a "child" of a deceased wage-earner under 42 U.S.C. § 416(h). The question comes before this court on cross-motions for summary judgment.

### I

Dolores and Gordon Wrenn were divorced in 1968. In 1969, Ms. Wrenn began living with John Aceto, a chronic alcoholic, and continued to do so until the summer of 1970. On or about September 25, 1970, she gave birth to Roy Wrenn, the plaintiff. For the next two years, Aceto visited Ms. Wrenn and the child intermittently for periods of up to two weeks. During this time, Aceto made small contributions to the child's support, providing a stroller, clothes, and occasional sums of money.[2] On September 29, 1972, Aceto died.

In 1975, Ms. Wrenn applied on behalf of the plaintiff for Surviving Child's Benefits, claiming that John Aceto was his father. The Secretary denied the application on the ground that plaintiff was not the "child" of Aceto within the meaning of 42 U.S.C. § 416(h)(3). Ms. Wrenn reapplied in 1977 to the Social Security Administration, but her claim was denied initially and on reconsideration. After a hearing, an Administrative Law Judge upheld the denial, finding that Aceto had neither "acknowledged Roy Wrenn as his child"[3] nor provided him with "regular and substantial support." Tr. 14. On March 1, 1979, the Appeals Council of the Social Security Administration affirmed the Administrative Law Judge's determina-

3. This court assumes that the Administrative Law Judge meant that Aceto never acknowledged paternity *in writing*. Indeed, it appears that the question as to whether Aceto acknowledged paternity orally was neither raised nor decided below.

tion, and thus rendered the decision final for purposes of judicial review. Ms. Wrenn now appeals to this court, challenging both the factual findings reached and the legal standards applied below.

## II

The complicated maze of statutes granting Surviving Child's Benefits provides several ways for illegitimate children to attain the status of a deceased wage-earner's "child," and thereby establish eligibility. For example, a written acknowledgment of paternity by the decedent, a court paternity decree, or a court order requiring the decedent to contribute to the child's support presumptively establishes the right to benefits. 42 U.S.C. §§ 416(h)(3)(C)(i); 402(d)(3). Alternatively, illegitimate plaintiffs may follow the path chosen by Ms. Wrenn in this case and attempt to convince the Secretary that the decedent was the father of the child, and that he was "living with or contributing to the support" of the child when he died. 42 U.S.C. §§ 416(h)(3)(C)(ii); 402(d)(3). Finally, claimants may prevail by demonstrating that the intestacy law of the state in which the decedent was domiciled at the time of his death would permit the illegitimate child to inherit. 42 U.S.C. §§ 416(h)(2)(A); *Mathews v. Lucas*, 427 U.S. 495, 499 n. 2, 514 n. 17, 96 S.Ct. 2755, 2759 n. 2, 2767 n. 17, 49 L.Ed.2d 651 (1976).

Although plaintiff's appeal chiefly attacks the Secretary's conclusion that the decedent had not contributed to Roy Wrenn's support, a recent change in Massachusetts intestacy law makes it unnecessary to consider the validity of that conclusion. At the time the Social Security Administration reached its final decision in this case, Massachusetts law provided that "[a]n illegitimate child whose parents have intermarried and whose father has acknowledged him as his child or has been adjudged his father under chapter two hundred and seventy-three shall be deemed legitimate." Mass.Gen.Laws Ann. ch. 190, § 7 (repealed 1980). That section provided no support for plaintiff's claim, since Ms. Wrenn and John Aceto never married. But in *Lowell v.*

*Kowalski,* —— Mass. ——, 405 N.E.2d 135 (Mass.1980), the Supreme Judicial Court invalidated section 7 on the ground that it violated the state Equal Rights Amendment. Finding no compelling interest to justify the formidable statutory obstacles to inheritance from the natural father, the court struck down the intermarriage requirement and left in place the alternative requirements of acknowledgment and adjudication. *Id.* at 141.

The Massachusetts legislature then amended the statute. It retained the old provision as the first sentence of the new section, but added:

> If a decedent has acknowledged paternity of an illegitimate person or if during his lifetime or after his death a decedent has been adjudged to be the father of an illegitimate person, that person is heir of his father . . . .

1980 Mass.Adv.Legis.Serv. ch. 396, § 7. Hence, Massachusetts law now permits inheritance by illegitimates whose paternity has been "acknowledged" by the decedent.

The question then becomes whether the evidence presented below demonstrates an "acknowledgment" under Massachusetts law, so as to make plaintiff an intestate heir and therefore within the scope of 42 U.S.C. § 416(h)(2)(A). In *Lowell*, the Supreme Judicial Court specifically declined to decide the question of what kind of acknowledgment the old statute required:

> We leave to another case, if it should arise, the question whether, in a contested proceeding, proof of paternity may be made out in the absence of the father's written acknowledgment of his paternity . . ., his sworn testimony to the same effect, or an adjudication of paternity.

405 N.E.2d at 141. When it amended the statute, the legislature, presumably aware of the *Lowell* decision, nevertheless passed up the opportunity to specify the permissible forms of acknowledgment. Hence, the legislature apparently intended the courts to draw the precise contours of the statutory requirement.

What is clear, however, is that the policy behind the acknowledgment require-

ment is the avoidance of fraudulent claims. *See Lowell v. Kowalski*, —— Mass. ——, 405 N.E.2d 135, 140 (Mass.1980). As the Supreme Judicial Court recognized in *Commonwealth v. MacKenzie*, 368 Mass. 613, 617–18, 334 N.E.2d 613, 616 (1975), determinations of paternity pose unique problems of proof:

> [B]ecause the woman carries and bears the child, the pressures of society make it nearly impossible for her successfully to deny parenthood or to avoid responsibility for the child. The father, on the other hand, because not visibly linked to the child, often is unaware of the tie or denies it, and thus the fact of his parenthood is more difficult to prove.

*Id.* at 617, 334 N.E.2d at 616. Naturally, the lack of an obvious visible link between father and son presents an obstacle to establishing the paternity of the real father. At the same time, it heightens the danger that the wrong person may be charged with fatherhood.

■ It is equally clear that the likelihood of fraud varies with the degree of closeness between father and child, and thus depends heavily on the circumstances of the individual case. The policy therefore defies translation into a simple rule. The acknowledgment requirement is best determined on a case-by-case basis, weighing the probative value of any evidence, oral or written, of acknowledgment against the likelihood of fraud inherent in the particular circumstances.

■ Defendant reads the Massachusetts statute to require an acknowledgment in writing. But such a construction has no basis in either the statutory language or the policy of fraud avoidance. Under the old section 7, plaintiffs could prove acknowledgment by showing conduct or declarations implying the father's recognition of the child. *See Houghton v. Dickinson*, 82 N.E. 481, 196 Mass. 389 (1907). Had the legislature wished to substitute a writing requirement for the traditional, more liber-

al rule, it most likely would have attached some limiting modifier to the statutory term "acknowledgment." Furthermore, there is nothing magic about a writing. Consistent oral testimony from disinterested sources, especially when supported by documentary evidence, might well be more persuasive than a single writing which purports to bear the decedent's signature.

■ It remains to apply these principles to the instant case. Ms. Wrenn testified at the administrative hearing that John Aceto was the father of her son Roy, Tr. 24–25, and that Aceto had acknowledged paternity to his sisters, his co-workers, and Ms. Wrenn's family. Tr. 27. Ms. Anita Harvey, a social worker, affirmed that from 1970 to 1973 Ms. Wrenn had consistently referred to Aceto as the father of Roy. Tr. 109. Ms. Wrenn's mother also corroborated Ms. Wrenn's testimony. Tr. 29. Written evidence of acknowledgment came from Aceto's sisters, Adeline Hatch and Ida Robbins. Ms. Hatch, in an affidavit dated June 11, 1975, asserted that Aceto had acknowledged paternity of Roy both during and after Ms. Wrenn's pregnancy. Tr. 99–100. The record also contains several letters from Ms. Hatch to Ms. Wrenn, dating from January 21, 1970 to January 10, 1974, which repeatedly refer to Roy as Aceto's child. Tr. 70–95. Ms. Robbins submitted a letter on January 22, 1979 noting that Aceto had acknowledged paternity to her. Tr. 111. Ms. Robbins also offered a letter from the decedent to her stating that "the baby is alright [sic] and in good health." Tr. 112.

In short, the record is replete with evidence of acknowledgment, and the danger of fraud is minimal. Aceto's expressed concern in his letter to Ms. Robbins over "the baby," while not an explicit acknowledgment of paternity, strongly suggests that Aceto believed he was the father. The letters from his sisters are highly probative of acknowledgment, for the sisters' perceptions were likely arrived at from communications with their brother.[4] Ms. Wrenn's

---

4. Ms. Robbins' letter of January 21, 1970 to Ms. Wrenn demonstrates that the two had never

met before Ms. Robbins found out about the child:

testimony to the same effect must of course be accorded less weight in view of her substantial interest in the litigation. But her version of the facts has remained the same since 1970. The consistency of Ms. Wrenn's story, together with its corroboration by others who are disinterested, are relevant factors to weigh in assessing her credibility.

Under the circumstances of this case, therefore, this court holds that Massachusetts intestacy law would permit Roy Wrenn to inherit as an acknowledged illegitimate son.[5] He is therefore a child of a deceased wage-earner under 42 U.S.C. § 416(h)(2)(A) and is entitled to Surviving Child's Benefits. Plaintiff's motion for summary judgment is allowed.

An order will issue.

I am John's sister Ida you haven't heard from me before. I just got a letter from John, he is very concerned for the baby over the German Shepherd dog you have. He asked me to write to you.

5. To the extent that the Administrative Law Judge's conclusion that Aceto never "acknowledged" paternity represents a finding of no *oral* acknowledgment, this court rejects it as lacking substantial evidence. See 42 U.S.C. § 405(g); note 3 *supra*.