COMMONWEALTH *vs.* JOSEPH FANCIULLO.

Worcester.   November 5, 1980. — December 22, 1980.

Present: GRANT, CUTTER, & NOLAN, JJ.

*Illegitimate Child,* Support.  *Parent and Child,* Support of illegitimate
   child.

At the trial of a complaint under G. L. c. 273, § 15, evidence that the de-
   fendant had had sexual intercourse with the complainant on May 15
   and 21, 1977, and that a child was born to her on February 14, 1978,
   was sufficient to warrant a finding that the defendant was the father
   of the child.  [65]
A complaint charging the defendant with neglect to support an illegiti-
   mate child in violation of G. L. c. 273, § 15, should have been
   dismissed where there was insufficient evidence to warrant a finding
   that the defendant knew or should have known, prior to the service of
   the complaint, that he was the father of the child.  [65-68]
An adjudication of paternity entered under G. L. c. 273, § 15, without a
   conviction under that statute, is not a sufficient basis for an order for
   support and maintenance.  [68-69]

COMPLAINT received and sworn to in the District Court of
Western Worcester on March 28, 1978.

Upon appeal to the Superior Court Department, the case
was heard by *Beaudreau, J.*

*Mark G. Miliotis* for the defendant.

*Joseph Lostracco,* Assistant District Attorney, for the
Commonwealth.

GRANT, J.  The defendant was tried without jury in the
Superior Court on a complaint under G. L. c. 273, § 15, as
appearing in St. 1977, c. 848, § 6.[1]  At the conclusion of the

---

[1] "Any parent of an illegitimate child, whether begotten within or with-
out the commonwealth, who neglects or refuses to contribute reasonably
to its support and maintenance, shall be guilty of a misdemeanor.  If there
has been any final adjudication of the paternity of the child, such

Commonwealth's case the defendant presented a motion for the entry of a "judgment of acquittal," which was impliedly denied. The defendant rested. The judge entered an express adjudication of paternity, placed the defendant on probation, and ordered him to make periodic payments for the support and maintenance of the child.[2] The defendant appealed. *Commonwealth* v. *Reed,* 364 Mass. 545, 546-547 (1974). *McHoul* v. *Commonwealth,* 365 Mass. 465, 469 (1974).

1. There had been no prior adjudication of paternity, but G. L. c. 273, § 15, as in effect at the time of the alleged offence and at the time of the trial[1], expressly contemplated that such an adjudication could be made in proceedings brought thereunder.[3] There was evidence that the defendant had had sexual intercourse with the complainant on May 15 and 21, 1977, and that a child was born to her on February 14, 1978. That evidence was sufficient to warrant a finding that the defendant was the father of the child. See and compare M___ v. W___, 352 Mass. 704, 706 (1967).

2. The more difficult question is whether the evidence was sufficient to warrant a finding that the defendant knew or should have known that he was the father of the child, so that it could be inferred that he had "neglect[ed] or refuse[d]" to provide for its maintenance and support within the meaning of § 15. The evidence most favorable to the Commonwealth on this point may be summarized as follows.

---

adjudication shall be conclusive on all persons in proceedings under this section; otherwise, the question of paternity shall be determined in proceedings hereunder. The duty to contribute reasonably to the support of such child shall continue during its minority." The amendment of this section which was effected by St. 1979, c. 621, § 2, is not material to the present case.

[2] There was no express finding of guilty, but the parties have proceeded on the basis that such a finding was implied in the circumstances. Thus, the defendant's claim of appeal refers to "the verdict of guilty entered December 13, 1978."

[3] The same is true under the 1979 amendment of § 15 which is referred to in note 1, *supra.*

In early May, 1977, the complainant struck up an acquaintance with the defendant in a cocktail lounge in Warren where he was then employed as a bartender. Shortly prior to the first act of intercourse the defendant told the complainant that he had "just graduated from hair dressing school." Either on that occasion or shortly thereafter he signed and gave the complainant and her girl friend business cards of a hairdressing establishment located on Main Street in Leominster. According to the complainant, the defendant referred to that establishment as "a place . . . [where] he thought he was going to start working."

As already mentioned, the two acts of intercourse occurred in the middle and latter part of May, 1977. The defendant seems to have disappeared from sight shortly after the second act, and the complainant had no conversation with him at any time thereafter. Some time in June she discovered that she was pregnant. In either the latter part of that month or the early part of July she composed a letter to the defendant in which she advised that she was pregnant by him.[4] She mailed the letter in an envelope bearing the defendant's name and the address of a hairdressing establishment located on Central Street in Leominster.[5] She testified that she had obtained that address from a newspaper advertisement of that establishment which contained a picture of the defendant. That advertisement was received in evidence, over the valid objection of the defendant that there was no evidence of when the advertisement had

---

[4] General Laws c. 273, § 15, unlike § 13 of that chapter (as appearing in St. 1977, c. 848, § 5), does not impose any liability on the father of an illegitimate child for the expenses of the pregnancy or the confinement of the mother. See *Baby X* v. *Misiano,* 373 Mass. 265 (1977), which was decided with reference to G. L. c. 273, §§ 11-15, as in effect prior to St. 1977, c. 848, §§ 5-7. We assume that the evidence as to the complainant's letter to the defendant was introduced for the purpose of raising an inference that the defendant should have made later inquiry as to whether a child had in fact been born to the complainant.

[5] It will be noted that the complainant did not employ the address of the establishment located on Main Street in Leominster where the defendant had said he "thought he was going to start working."

appeared in the newspaper.[6]  That lacuna in the evidence was never filled.  It does not appear that the complainant placed her name or return address on the envelope containing the letter.

The child was born on February 14, 1978.  In the latter part of that month the complainant placed a birth announcement in an envelope bearing the defendant's name. The announcement, a copy of which was received in evidence, contained a small picture of a baby, the name "Jennifer Lynn [surname of the complainant]," and the date of the child's birth.  Except for the coincidence in surnames, there was nothing on the face of the announcement to indicate the identity of the mother.  There was nothing at all to indicate the identity of the father.  The complainant mailed the envelope containing the announcement and bearing the defendant's name to the address of a hairdressing establishment located on Summer Street in Fitchburg. The defendant had never mentioned that establishment to her.  She had obtained its name and address from its business card, which bore the defendant's name.  A friend had given the card to her "when I was pregnant."  On the evidence, the "when" could have been any time between June of 1977, when the complainant discovered she was pregnant, and the end of that year.  When the card had come into the possession of the friend was similarly shrouded in obscurity.  Again, there was no evidence of whether the complainant had placed her name or return address on the envelope.

Except as already indicated, there was no evidence of where the defendant had been employed during any portion of the period between the time when he dropped from sight

---

[6] If we were to look at the back of the page on which that advertisement was printed, we would discover three advertisements of coming attractions scheduled for the period October 1 through 14, 1977, and an advertisement of a "[f]oliage tour" in New Hampshire.  It strikes us as unlikely that any of those attractions or a foliage tour would have been publicized as early as the latter part of June or early July, 1977, which is when the complainant said she mailed her letter.

shortly after May 21, 1977, and the time when he received notice of the present complaint.[7] Other than what has already been related, there was no evidence from which it could have been found that the defendant knew or should have known that he was the father of the complainant's child. We are of opinion that the evidence as a whole, taken in the light most favorable to the Commonwealth, was insufficient to warrant a rational trier of fact (*Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 [1979]) in concluding that the defendant knew or should have known at any time prior to the service of the complaint on him that he was the father of the child. Without such evidence the defendant could not properly be convicted of having "neglect[ed] or refuse[d]" to contribute to the support and maintenance of the child within the meaning of G. L. c. 273, § 15. It follows that the conviction must be set aside and the complaint dismissed.

3. The Commonwealth has suggested that we should salvage the order for support, as was done in *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 617-619 (1975). We think the suggestion fails to apprehend the particular statutory provisions which were involved in that case. There the complaint was under the former G. L. c. 273, § 11. Section 16 of that chapter, as unamended, when read in light of §§ 1 (as amended through St. 1971, c. 762) and 5 (as amended through St. 1925, c. 182) of that chapter, expressly provided that an adjudication of paternity made under § 11 could serve as the basis for the entry of an order for the reasonable support of an illegitimate child.[8] In the statutory aftermath of the *MacKenzie* case, G. L. c. 273, § 11, was repealed (by St. 1977, c. 848, § 7) and effectively replaced by G. L. c. 273, § 12, as appearing in St. 1977, c. 848, § 5. Section 16 of G.L. c. 273 was amended by St. 1977, c. 848,

---

[7] The complaint issued out of a District Court on March 28, 1978.

[8] As the court noted (368 Mass. at 618), a final adjudication of paternity under § 11 also constituted conclusive evidence of paternity in any prosecution brought under § 15, as unamended.

§ 6, to provide that orders under §§ 1 and 5 (as appearing in St. 1977, c. 848, §§ 2 and 3, respectively[9]) of that chapter (including among them orders for the reasonable support of an illegitimate child) can be entered "[a]fter the adjudication and the birth of the child, in proceedings under section twelve, or *after conviction, in proceedings under the preceding section*" (emphasis supplied).

We think it quite clear that it is only a conviction under the present G. L. c. 273, § 15, that can serve as the basis for an order for support and maintenance under that section or under the present G. L. c. 273, §§ 1 and 5, and that an adjudication of paternity entered under § 15, standing by itself, will not suffice for the purpose now desired by the Commonwealth. As the conviction in this case must be set aside for the reasons already given, there is no basis for salvaging the present order for support and maintenance.[10]

The judgment is reversed, the finding of guilty is set aside, and the complaint is to be dismissed.

*So ordered.*

---

[9] We are not here concerned with the further amendments of G. L. c. 273, § 5, which were effected in 1978 and 1979.

[10] In *Commonwealth* v. *Gross*, 324 Mass. 123, 125 (1949), the offence set out in G. L. c. 273, § 15, as unamended, was characterized as a continuing one. The Commonwealth may wish to consider whether it should now proceed with a new complaint alleging a failure to support during a period subsequent to the one referred to in the present complaint. In any such prosecution, the defendant would be entitled to credit for any payments he has made pending this appeal on the question of what was "reasonable" support and maintenance within the meaning of § 15. We intend no intimation on the question whether the Commonwealth can now proceed under G. L. c. 273, §§ 12, 13 and 16, as now in effect.