COMMONWEALTH *vs.* RICHARD N. CHASE.

Suffolk.  November 3, 1981. — March 2, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Parent and Child,* Support of illegitimate child.  *Practice, Criminal,* Support of illegitimate child.  *Practice, Civil,* Support of illegitimate child.

In the prosecution of a criminal complaint under G. L. c. 273, § 15, for neglect or refusal to support an illegitimate child there can be no finding that the defendant neglected or refused to support the child unless the evidence establishes that, at the time of service of the complaint, the defendant knew or should have known that he was the parent of the child in question, or had acknowledged parentage, or had been adjudicated the parent under G. L. c. 273, § 12. [467]

Where an adjudication of parentage is made in the context of a bench trial of a criminal proceeding under G. L. c. 273, § 15, for neglect or refusal to support an illegitimate child, the judge may enter an order for support of the child during the pendency of the defendant's appeal for a trial de novo in the jury session of a District Court. [468]

A father's obligation to support an illegitimate child commences at the time he knows or should know that he is the father of the child, or at such time as he is adjudicated the father under G. L. c. 273, § 12, or acknowledges paternity under G. L. c. 273, § 15, and, on the father's conviction in a criminal proceeding under G. L. c. 273, § 15, for nonsupport of the child, a court may, subject to a six-year criminal statute of limitations, make an order providing retroactively for support of the child during the time he was obligated to furnish support. [468-472]

COMPLAINT received and sworn to in the Boston Municipal Court Department on September 18, 1979.

A motion to dismiss was heard by *Dolan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kathleen Coffey,* Assistant District Attorney (*Carol Anne Fagan,* Legal Assistant to the District Attorney, with her) for the Commonwealth.

*Phyllis Baumann* for the defendant.

LIACOS, J. This case is before us for further appellate review on applications filed by both the defendant and the Commonwealth, after a decision by the Appeals Court. *Commonwealth* v. *Chase*, 11 Mass. App. Ct. 884 (1981).

We are asked to decide whether a prosecution of the father of an illegitimate child for criminal nonsupport pursuant to G. L. c. 273, § 15,[1] is constitutionally permissible without a prior adjudication of paternity. In addition, we are asked to determine whether a prosecution can be maintained under § 15 in the absence of evidence that the defendant knew or should have known of a claim that he or she is the parent of the child in question. The final issue presented for resolution is whether, following a conviction for criminal nonsupport, a court may enter orders, retroactive in effect, for the payment of support.

We decide this case as one of four cases, each of which concerns either the nature or the proper interpretation of § 15 and other sections of the statutory plan set forth by

---

[1] General Laws c. 273, § 15, as amended through St. 1977, c. 848, § 6, provided in part: "Any parent of an illegitimate child, whether begotten within or without the commonwealth, who neglects or refuses to contribute reasonably to its support and maintenance, shall be guilty of a misdemeanor. If there has been any final adjudication of the paternity of the child, such adjudication shall be conclusive on all persons in proceedings under this section; otherwise, the question of paternity shall be determined in proceedings hereunder. The duty to contribute reasonably to the support of such child shall continue during its minority."

The amendment of this section by St. 1979, c. 621, § 2, is not material to the present case, but added the following language as a second to last sentence: "If such person has sworn to and executed an acknowledgment of paternity which was accompanied by a written affirmation of paternity sworn to and executed by the mother, such acknowledgment shall be admissible as evidence hereunder and shall be prima facie evidence of paternity; provided, however, that when such acknowledgment is executed with the department of public welfare or with any official of the court, such acknowledgment shall not be admissible as evidence unless the person was informed in writing at the time the acknowledgment was executed that such acknowledgment could be used against him in criminal nonsupport proceedings under this chapter."

G. L. c. 273, §§ 12-18, for obtaining support for the children of unwed parents.[2] We note that we recently repeated our invitation to the Legislature to reconsider the nature and governing principles of the Commonwealth's paternity statutes. *Davis* v. *Misiano*, 373 Mass. 261, 264 (1977). See *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 619 n.5 (1975). The Legislature responded to our original request in *MacKenzie*, by enacting St. 1977, c. 848, which effected, among other changes, the repeal of G. L. c. 273, § 11. General Laws c. 273, § 11, had made the begetting of an illegitimate child a misdemeanor. See *Commonwealth* v. *Dornes*, 239 Mass. 592, 594 (1921). But, as this and the related cases we decide this day show, the legislative scheme still remains unclear, at least as to a number of procedural matters. See *Chase, supra* at 887-888.

We have held today that the adjudication of the paternity of an illegitimate child, when conducted for the purpose of obtaining support pursuant to G. L. c. 273, § 12, is a civil action. *Commonwealth* v. *Lobo*, ante 436 (1982). See *Sullivan* v. *Commonwealth*, 383 Mass. 410, 412 (1981). No such holding has been made by this court with regard to nonsupport actions under c. 273, § 15. It is true that the almost universal practice in the trial courts in such cases is that, upon a conviction for nonsupport, the offending parent is placed on conditional probation which is linked to compliance with a support order. Cf. *M____* v. *W____*, 352 Mass. 704, 709 & n.7 (1967) ("As a practical matter and in effect § 15 is often applied essentially as a civil remedy"); Uniform Civil Liability for Support Act, 9 U.L.A. (Master ed. 1979) (adopted in four States, essentially decriminalizing issues of nonsupport). The fact remains, however, that the failure to support a child continues to be "expressed in a criminal context" and is punishable as a misdemeanor. *Commonwealth* v. *MacKenzie, supra* at 614. So long as criminal

[2] The three other cases in this package are *Commonwealth* v. *Lobo*, ante 436 (1982); *Commonwealth* v. *Dias*, ante 455 (1982); *Commonwealth* v. *Gruttner*, post 474 (1982).

culpability may be fastened on any parent of an illegitimate child for "neglect[ing] or refus[ing] to contribute reasonably to its support and maintenance," by the very language of § 15, nonsupport proceedings under c. 273, § 15, must be treated as if they were criminal in nature.[3]

We turn now to the facts. On September 18, 1979, the mother of a child born nine years earlier filed a complaint in the Municipal Court of the City of Boston pursuant to G. L. c. 273, § 15, alleging that the defendant was the father of the child and that the defendant had refused to contribute reasonably to the child's support and maintenance. The defendant was adjudicated the father of the child and was found guilty of nonsupport at a bench trial held April 15, 1980.[4] On that same date, the defendant entered his appeal of the findings and requested a trial de novo in the jury of six session. G. L. c. 278, § 18, and G. L. c. 218, § 27 (a). His pretrial motion to dismiss was allowed on August 25, 1980, and the Commonwealth appealed. G. L. c. 278, § 28E. Mass. R. Crim. P. 13 (c) (1) and 15 (a) (1), 378 Mass. 871, 882 (1979). The Appeals Court reversed the order dismissing the complaint. *Commonwealth* v. *Chase, supra.* The Appeals Court held that "the financial obligation which can be imposed on a father under [c. 273,] §§ 15, 16 and 5 is prospective only." *Id.* at 887. While we agree with the result reached by the Appeals Court, we do not agree with its ruling that orders under § 15 may be prospective only. We hold that a final conviction, under G. L. c. 273, § 15, for

[3] Compare proceedings for criminal nonsupport with several forfeiture statutes we have recently had occasion to examine. See *Commonwealth* v. *One 1972 Chevrolet Van, ante* 198 (1982); *Commonwealth* v. *United Food Corp.*, 374 Mass. 765 (1978). Where a noncriminal proceeding is "predominantly remedial," although it has "unseverable punitive side effects," many of the constitutional rights mandated in criminal acts are not applicable. See *Commonwealth* v. *One 1972 Chevrolet Van, supra* at 200. Compare also our treatment of G. L. c. 273, § 12, as civil in *Commonwealth* v. *Lobo, supra.*

[4] From the record before us, it does not appear that the judge entered an order for payment of support at that time. Like an adjudication made at a bench trial in proceedings under G. L. c. 273, § 12, this adjudication was not "final."

the criminal nonsupport of a child may be followed by the entry of support orders which may, within appropriate time limits, have both retroactive and prospective application.

We examine first the findings of fact and rulings of law made by the District Court judge who dismissed the complaint. After first finding "that the defendant was never adjudicated the father of the child in question" (see note 4, *supra*), the judge ruled that, as a matter of law, "the legal obligation to support an illegitimate child does not attach until paternity has been established." The judge ruled further "that to impose a support obligation prior to the establishment of paternity would require a person (or persons) who believes he could be the father of a child, to support that child or else risk later being convicted of a crime." This, he reasoned, was an unconstitutional denial of due process.

The judge concluded by emphasizing that he did not mean by the foregoing to suggest "that the support obligation prior to adjudication cannot and should not be enforced. It simply requires the support obligation must first rest upon an adjudication of paternity. At that point it can be enforced retrospectively as well as prospectively."

As we interpret these findings and rulings, they may be condensed to two propositions. The first is that when the adjudication of paternity is made in the context of a criminal nonsupport proceeding, no support order may be imposed until the adjudication is final. Once such a final adjudication has been made, an order may be imposed, upon conviction, with both retroactive and prospective application.

The second proposition for review, the elucidation of which requires some interpolation, as the Appeals Court noted, is "that the prosecution of the complaint in the absence of a prior adjudication of the defendant's paternity of the child in question could result in depriving the defendant of his rights under unidentified portions of the United States Constitution and the Massachusetts Declaration of Rights." *Commonwealth* v. *Chase, supra* at 885. We dispose of this latter point first.

The second sentence of § 15 provides: "If there has been any final adjudication of the paternity of the child, such adjudication shall be conclusive on all persons in proceedings under this section; *otherwise, the question of paternity shall be determined in proceedings* hereunder" (emphasis supplied). Not only does the quoted language explicitly state "that a prior adjudication of paternity is not a prerequisite to the maintenance of the prosecution of a male under § 15," *Commonwealth* v. *Chase, supra* at 886, but we think the plain meaning of the statute is that an adjudication of paternity may be a part of the same trial which results in a conviction of neglect or refusal to support the child. See *Commonwealth* v. *Gross*, 324 Mass. 123, 124 (1949). The statute, however, does not permit a finding that the defendant refused to meet his support obligations without an adjudication of paternity or an alternative basis of determining that the defendant was obligated to support the child.

The Appeals Court summed up its position on the constitutional issues in the following manner: "We find it unnecessary to rehearse all the constitutional and other arguments now advanced by the defendant or to recite all the fears expressed by the judge who allowed the motion to dismiss. It is enough to say that all the arguments founder and all the fears should be dissipated as soon as it is understood: that no prosecution can be maintained under § 15 in the absence of evidence that the defendant knew or should have known of a claim that he or she is a parent of the child in question . . . that no conviction can be obtained under § 15 except upon proof beyond a reasonable doubt that the defendant is a parent; that no financial liability can be imposed on the father of a child until he has been convicted; that the financial obligation which can be imposed on a father under §§ 15, 16 and 5 is prospective only; and that there is nothing in the statutory scheme that smacks of an ex post facto law (*Commonwealth* v. *Callaghan*, 223 Mass. 150, 151, cert. denied, 241 U.S. 667 [1916])" (citation omitted). *Commonwealth* v. *Chase, supra* at 887. We examine each point made by the Appeals Court in turn.

Without evidence that, at the time of the service of the complaint, the defendant knew or should have known that he or she was the parent of the child in question, had acknowledged parentage, or had been adjudicated the parent under § 12, the prosecution of a criminal nonsupport case cannot result in a finding of neglect or refusal. The Appeals Court had addressed this issue in an earlier opinion by holding that "[w]ithout such evidence the defendant could not properly be convicted of having 'neglect[ed] or refuse[d]' to contribute to the support and maintenance of the child within the meaning of G. L. c. 273, § 15." *Commonwealth* v. *Fanciullo*, 11 Mass. App. Ct. 64, 68 (1980). Some difficulty is caused by the language chosen by the Appeals Court on this point in its opinion in the case at bar. In its opinion in this case, the test is stated in terms of whether a "defendant knew or should have known of *a claim* that he or she is the parent of the child in question" (emphasis supplied). *Commonwealth* v. *Chase*, 11 Mass. App. Ct. 884, 887 (1981). Since the citation immediately following this phrase is to *Commonwealth* v. *Fanciullo*, 11 Mass. App. Ct. 64 (1980), we think it should be treated as a slip of the pen. Mere knowledge of a claim of paternity is insufficient. If the test is to be stated in terms of knowledge of a claim, the Commonwealth must also prove that the defendant knew, or had reason to know, that the claim was valid.

This requirement of some *scienter* on the part of the defendant immunizes the statute from due process challenge. Just as the Commonwealth must prove parenthood beyond a reasonable doubt, *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 619 n.5 (1975); see *Davis* v. *Misiano*, 373 Mass. 261, 264 [1977]), so too must it prove that the defendant knew or should have known, prior to the issuance of a complaint, that he, or she, was the parent of the child in question. Without such proof, not only can there be no conviction, but there can be no order of support. See *Commonwealth* v. *Fanciullo, supra* at 68.

We have discussed, in another of this group of cases, when financial liability can be imposed on a parent. *Commonwealth* v. *Lobo, supra.* One of the questions addressed in *Lobo* concerned specifically the power of a trial judge to enter pendente lite orders after an initial adjudication of paternity in proceedings under G. L. c. 273, § 12. We held that, since such proceedings were civil in nature, such orders are permissible, much as they are in care and protection proceedings under G. L. c. 119, §§ 24-29. *Id.* at 449-450. By G. L. c. 218, §§ 26A and 27A, a defendant in a trial at the District Court is given the right to a trial de novo before a jury of six. The taking of an appeal from a finding of guilt necessarily vacates that finding in addition to any sentence imposed. *Mann* v. *Commonwealth*, 359 Mass. 661, 666 (1971). Thus a conviction for nonsupport at the bench trial is vacated by appeal. The initial adjudication of paternity is not, however, a nullity for all purposes. See *Rubera* v. *Commonwealth*, 371 Mass. 177, 183 (1976). Section 12 provides that "[t]he [initial] adjudication, . . . shall be final and conclusive unless an appeal therefrom be taken." Nevertheless, we have held that a "nonfinal" adjudication made in a § 12 proceeding can be the basis for a pendente lite order, by the terms of G. L. c. 273, § 16. *Commonwealth* v. *Lobo, supra.* We see no reason to make a distinction with respect to adjudications of paternity, under § 15, made at bench trials (see note 4, *supra*). Generally, the taking of an appeal does not vacate the findings at trial unless otherwise mandated by statute. *Enbinder* v. *Commonwealth*, 368 Mass. 214, 218, cert. denied, 423 U.S. 1024 (1975). See *Whitney* v. *Commonwealth*, 337 Mass. 722, 724 (1958). The Legislature has clearly provided, by § 16, that a judge may impose pendente lite orders after an initial adjudication of paternity under either § 12 or § 15.

The question remaining is whether, after conviction, the financial obligation which can be imposed may be retroactive as well as prospective. The Commonwealth argues that "[t]he legislature intended an adjudication of paternity to be a procedural prerequisite to an adjudication of support,

not to be a bar to support obligations incurred before the bringing of the paternity actions." We agree.

The duty to support an illegitimate child does not commence only with an acknowledgment or adjudication of paternity. Although this duty did not exist at common law, it has existed by statute in this Commonwealth from as early as 1692. Province Laws 1692-1693, c. 18, § 5. *Hill* v. *Wells*, 6 Pick. 104, 107-108 (1828). See *Commonwealth* v. *Lobo, supra* at 444; *Davis* v. *Misiano, supra* at 263. Breach of this duty has been punishable in criminal proceedings since 1913. St. 1913, c. 563, § 7.[5] See *Commonwealth* v. *Callaghan, supra.*

In *Commonwealth* v. *Callaghan, supra,* we noted that, while a statute purporting to punish a defendant for the failure to support his illegitimate child during a time before the statute took effect would be ex post facto, no such bar precluded punishment for the same offense committed after July 1, 1913. *Id.* at 151. Thus, while the duty to support may arise with the birth of the child (see *Baby X* v. *Misiano*, 373 Mass. 265, 266 [1977]), § 15 provides that no financial obligation may be laid at a defendant's door without either a final adjudication, or a properly sworn acknowledgment, of paternity. Prior knowledge of parentage, absent an adjudication or acknowledgment of the same, is also sufficient to trigger the duty to support. Compare G. L. c. 273, § 8, as amended through St. 1960, c. 791 ("[t]he legal duty of the parent or parents to support a [legitimate] minor child shall continue notwithstanding the absence of a court decree ordering them or either of them to pay for the support of said child"); *Keene* v. *Toth*, 335 Mass. 591, 594-595 (1957).

If, in a case where the defendant pleads not guilty, a final adjudication is followed by a conviction for nonsupport, G. L. c. 273, § 16, as appearing in St. 1977, c. 848, § 6, provides that "[a]fter the adjudication and the birth of the child, in proceedings under section twelve, or after convic-

---

[5] This statute was later codified as G. L. c. 273, § 15.

tion, in proceedings under [§ 15], the alleged father shall be subject upon the original complaint or indictment in such proceedings to penalties and orders for payments similar to those provided by the first ten sections of this chapter; and the practice established thereby shall, so far as applicable, apply to any proceedings under sections twelve to eighteen, inclusive."[6]

Proceedings under the first ten sections of c. 273 typically apply to the desertion and failure to support legitimate children, which is also made a misdemeanor by §§ 1-4. See *Commonwealth* v. *Lobo, supra* at 441-443. The first paragraph of § 5 of c. 273, as appearing in St. 1978, c. 552, § 43, provides, in relevant part, that "after conviction . . . the court, having regard to the circumstances and to the financial ability or earning capacity of the defendant, may make an order, which shall be subject to change from time to time as circumstances may require, directing the defendant to pay certain sums periodically, for a term not exceeding six years, to the probation officer, and may release the defendant from custody on probation."

The Appeals Court interpreted the words "certain sums periodically" to mean that "there is no power to order reimbursement for the expense of supporting an illegitimate child during any period which precedes a conviction under § 15." *Commonwealth* v. *Chase, supra* at 887. We see nothing in the language relied upon by the Appeals Court to warrant such a conclusion. The requirement that payments be made monthly or quarterly, and so forth, sheds no meaning as to the nature of such payments.[7] By definition, a

---

[6] We have held, in *Commonwealth* v. *Lobo, supra*, that the adjudication of paternity under § 12 may serve as the basis only for prospective support orders under § 14 (aside from the expenses of confinement and pregnancy provided by § 13). *Id.* at 452-453.

[7] Compare the Uniform Parentage Act, 9A U.L.A. § 15(d) (1979), which provides that "support judgments or orders ordinarily shall be for periodic payments which may vary in amount . . . [t]he court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just." See also The Uni-

proceeding under § 15 is brought when a parent has neglected or refused to contribute to the support of an illegitimate child. Although nowhere in c. 273 is there an explicit provision for ordering retroactive payments on conviction, we think that to read a legislative intention to prohibit such orders into this absence of explicit language would be to defeat the primary purpose of the statutory plan. That purpose is to "further the interests of the child by requiring the father to contribute reasonably to its support so that the child would not become a public charge." *Vivori* v. *Fourth Dist. Court of Berkshire*, 323 Mass. 336, 338 (1948).

Where the defendant neglected or refused to support the child, after adjudication or acknowledgment of paternity, or after knowledge that the child is his, in derogation of this primary purpose, it is only fitting that he should compensate those who have borne his responsibility for him. *Fennell* v. *Russell*, 282 Mass. 67, 71 (1933). The fact of paternity thus may be established by an adjudication under G. L. c. 273, §§ 12 and 15, or an acknowledgment of paternity under G. L. c. 273, § 15, as amended. See *Lowell* v. *Kowalski*, 380 Mass. 663, 669-670 (1980). Additionally, the duty to support may be found in a § 15 proceeding based on a finding of paternity in the same proceeding, or on a finding beyond a reasonable doubt as to when the defendant knew or should have known of that fact. The obligation to support commences from the date of any of these events.

Section 13 of c. 273, as amended by St. 1977, c. 848, § 5, provides in part that, after "adjudication . . . the court . . . may make an order for payment to the mother or to a probation officer of a sum of money determined by the court for the expenses of the pregnancy and the confinement of the mother." Moreover, § 5 of that chapter allows the court, utilizing the probation collection system, to "pay

---

form Act on Paternity, 9A U.L.A. § 3 (1979), which limits "the father's liabilities for past education and necessary support . . . to a period of four years next preceding the commencement of an action."

We note, further, that under both Uniform Acts, paternity proceedings are deemed to be civil, not criminal.

over payments received . . . [from the defendant] to the spouse or guardian or custodian of the child, . . . or to the state treasurer for the use of the department of social services when the payments are for the support of a child committed to it." We think it unlikely that the Legislature would authorize payments to those who have been supporting the child without recognizing that such agencies or individuals would wish to be compensated for expenditures made during the time the child was without the support of the parent. Cf. *Little* v. *Streater*, 452 U.S. 1 (1981) (State court ordered payments to include "accrued maintenance" owed by the defendant for past support).

Absent explicit legislative action to the contrary, we are of the opinion that payments ordered after final conviction under G. L. c. 273, § 15, may include provision for compensation for past support. Compare N.Y. Fam. Ct. Act § 545, 1981 N.Y. Laws, c. 68, § 1, amended 1981 N.Y. Laws, c. 695, § 8 ("any retroactive amount of support shall be paid in one sum or periodic sums"). Thus, in cases where the Commonwealth can prove that the defendant knew or should have known that he was the father of the child, or had been adjudicated the father under § 12, or had previously acknowledged paternity under § 15, and that he neglected or refused to contribute to the support of the child, the court may enter an order which makes some provision for the repayment of support given by others, for the period of time the defendant was obligated to support the minor, and for a period of not more than six years next preceding the date of the complaint.[8]

---

[8] We arrive at this time limitation because of the six-year limitation provided for the bringing of an indictment for an offense of this type. G. L. c. 277, § 63. See *Commonwealth* v. *Mondano*, 352 Mass. 260, 261 (1967); *Commonwealth* v. *Gross*, 324 Mass. 123, 124 (1949).

Section 15 makes the failure to support a continuing offense. Hence the statute of limitations does not bar the bringing of an action under it during the child's minority. *Commonwealth* v. *Gruttner, supra. Commonwealth* v. *Gross, supra.* However, the six-year bar must, of necessity, apply to limit the extent of the defendant's retroactive financial exposure. An hypothetical situation will be illustrative. We assume, without deciding,

The order dismissing the complaint is reversed, and the case is remanded to the jury of six session of the Municipal Court of the City of Boston for proceedings in accordance with this opinion.

*So ordered.*

---

that the obligation to support ends at a child's eighteenth birthday. Thus, if the failure to support had been continuous, an action could be brought before the once-dependent child's twenty-fourth birthday. If, however, the obligation to support had terminated at age eighteen, there would be no recovery.