### Elizabeth P. Young *vs.* Sylvanus Makepeace.

Whether a child was a "full time child" may be testified to by any physician of ordinary experience who attended at its birth.

In a bastardy process, declarations of J. S. that he himself was the father of the child, and acts of J. S. relative to procuring an abortion on the complainant, if not made or done in the presence or with the knowledge of the complainant, are inadmissible to prove a conspiracy between the complainant and J. S., after said declarations, to charge the defendant with being the child's father.

In a bastardy process, the fact that the defendant was the father of the child may be established by a fair preponderance of evidence.

The defendant in a bastardy process contended at the trial that J. S. and not himself was the father of the child; proved that J. S. sent to the complainant a package made up like "doctor's powders;" and then offered evidence to show that, three or four days before sending this package, J. S. received a package of like size, shape and appearance, which contained drugs to produce an abortion.  *Held*, that the evidence was admissible, and the question of the identity of the packages was for the jury.

In a bastardy process, testimony as to the dissimilarity in personal appearance between the child and J. S. is inadmissible to rebut evidence introduced by the defendant to show that J. S. and not himself was the father.

After a verdict of guilty in a bastardy process, the court may, under the Gen. Sts. c. 72, § 7, pass the order of affiliation in the absence of the defendant.

An order of court in a bastardy process, after the defendant has been adjudged the father of the child; that he "stand committed " until he gives a bond conditioned to pay to the mother a certain gross sum, to pay a further amount quarterly " until the further order of the court," and to save harmless the parents of the mother and the town of her settlement against all charges for the maintenance of the child; and that the complainant shall recover the costs of suit; is valid under the Gen. Sts. c. 72, § 7.

COMPLAINT under the Gen. Sts. *c.* 72, charging the defendant with being the father of a bastard child, of which the complainant was delivered May 4, 1868.  The defendant gave bond to the complainant, conditioned to appear and answer to the complaint, and abide the order of the court thereon.

Trial in the superior court, before *Pitman*, J., who, after a verdict of guilty, allowed a bill of exceptions in substance as follows :

" The physician who attended at the birth of the child was a witness, and was asked whether in his opinion it was a full time child of the usual period of forty weeks. He answered that it was, and that ordinarily a seven months' child would not be so well developed. To the admission of this evidence the defendant objected as not a matter for an expert's testimony, but the judge admitted it.

" The defendant denied the charge against him, contended that Philander Dean was the father of the child, and introduced evidence tending to show intimacy between the complainant and Dean, (the complainant contradicted the same by other evidence,) during the summer and fall of 1867 and thereafterwards, and of various admissions of the complainant that Dean was the father of her child, and also of other facts tending more or less to establish this defence. Samuel S. Pratt, Jr., a witness for the defendant, was permitted, against the complainant's objection, to testify that, on Friday of cattle-show week, which was the first week in October 1867, and which commenced on Tuesday of that week, he received a small package from Dean to carry and give to the complainant, which he did on the following Monday, she requesting him at the time to keep dark about it, or words of that import. The witness described the package as done up in a piece of newspaper, about two and one half inches long and about two inches wide and fastened with a pin; that he put it in his vest pocket, and on taking it out afterwards he found it had become unfastened and saw several small packages, also of newspaper, like doctor's powders; did not see the contents of these packages, but had frequently seen doctor's powders done up in the same way. The defendant then, against the complainant's objection, offered to prove by Joseph H. Nichols that on the first or second day of the cattle-show he delivered to Dean a package similar in appearance, being of the same size, shape, and done up in the same manner, as the package delivered by Pratt to the complainant; and that the contents of said package were an abortive medicine. The defendant's counsel stated that he did not propose to identify the two packages as one and the same by any other evi-

dence. And the defendant contended that whether it was the same package delivered by Pratt to the complainant, and what effect the whole evidence ought to have, were matters for the jury to determine. The judge excluded the evidence of Nichols.

" The evidence tended to show that, prior to January 1, 1868, the complainant had not charged or intimated verbally, or otherwise, that the defendant was the father of the child, or had had connection with her, and the defendant offered evidence which, he contended, showed that on or about December 26, 1867, a conspiracy was entered into between the complainant and Dean to charge the defendant with being the father of the child, and thereby extort money from him ; and he thereupon claimed the right to prove, and offered to prove, various declarations and admissions made by Dean, prior to said conspiracy and after the child was begotten, that he was the father of the child ; and also offered to prove that Dean procured abortive medicines for the complainant, made application to sundry persons to procure an abortion upon her, and did various other acts relative to procuring an abortion upon her, although such declarations, admissions and acts were not made in her presence or brought home to her knowledge. But the judge ruled that, without considering whether such a conspiracy was established, the evidence offered was not competent upon this issue, and it was excluded."

The mother of the complainant was allowed, against the defendant's objections, to testify " to the complexion, eyes, and color of the hair of Dean, and the features of his face." The defendant afterwards offered evidence upon the same point. Dean was not seen by the jury. The child was shown to ᴖem.

The defendant requested the judge to instruct the jury " that ᴖe burden of proof, as in criminal cases, was upon the complainant to satisfy the jury beyond a reasonable doubt that the defendant had intercourse with the complainant at the time alleged in the complaint, and that he was the father of the child ; " but the judge declined so to do, and instructed them " that the burden was upon the complainant to satisfy them of

these facts by a fair preponderance of the evidence, as in other civil cases."

*J. Brown,* (*H. J. Fuller* with him,) for the defendant.

*S. R. Townsend,* for the complainant.

WELLS, J.   1. Whether a child was a "full time child" is not a question for experts, but may be testified to by any physician of ordinary experience, who attended at the birth.

2. The declarations and acts of Dean, not in the presence of the complainant "or brought home to her knowledge," were rightly excluded, as not in furtherance of the common purpose of the alleged subsequent conspiracy.   The claim that they were admissible, as a part of the *res gestæ* of the conspiracy, is founded upon a misapprehension of what constitutes the *res gestæ.*   The object of the supposed conspiracy was, not to beget the child, or to procure an abortion, for the purpose of charging it upon the defendant; but to charge him with the paternity of a child already begotten, and which their attempts at abortion had failed to remove.   The acts and declarations excluded had no reference to the defendant, nor to this alleged common purpose.   It is not contended that they were admissible upon any other ground.

3. The instruction in regard to the degree of proof required to sustain the complaint was clearly right.   *Richardson* v. *Burleigh,* 3 Allen, 479.

4. The testimony of Nichols, offered to show the character of the contents of the package delivered by him to Dean, was competent, if the jury should be satisfied that it was the same package which Dean sent by Pratt to the complainant.   And we are of opinion that it was for the jury and not for the court to determine the question of its identity.   The delivery by Nichols to Dean, on Tuesday or Wednesday "of cattle-show week," was not so remote from the time of the delivery by Dean to Pratt, on Friday of the same week, as to enable the court to say that the jury might not properly find, with the aid of the correspondence in the appearance of the package testified to in each case, that they were the same.   If Dean was, at that time, active in procuring means to produce an abortion upon the

complainant, with her concurrence, it was a strong circumstance in support of the defence set up in this case. The exclusion of this testimony makes a new trial necessary.

5. We think also that the testimony to show points of dissimilarity between the child and Dean should not have been admitted. Even where there is a noticeable resemblance, there may be equally marked points of dissimilarity. Points of dissimilarity, not implying a difference of race, do not tend to disprove paternity. They are, at most, of much less significance than points of resemblance. But proof of resemblance was excluded in *Eddy* v. *Gray*, 4 Allen, 435. That decision was based, somewhat, upon one in Maine, the reasons for which were considered quite satisfactory. *Keniston* v. *Rowe*, 16 Maine, 38. In the latter case, however, the evidence excluded was of dissimilarity. Resemblance was held to be properly a matter of consideration by the jury upon this issue, in *Gilmanton* v. *Ham*, 38 N. H. 108. But in that case the jury had both the child and the putative father before them, and took the fact from their own observation.

There is a still further objection to the testimony admitted in the present case. It instituted a comparison of features, complexion, &c., not between the child and the defendant, but with another party, not charged with the paternity otherwise than incidentally, by way of diverting the force of the evidence against the defendant.                    *Exceptions sustained.*

A new trial was had, and a verdict of guilty rendered, at March term 1870 of the superior court, and at the following September term that court, at a time assigned, of which the defendant was duly notified, but at which he was not present in court nor in custody, passed an order, that the defendant should "stand charged with the maintenance" of the complainant's child with the assistance of the mother as follows : " He shall pay the complainant forthwith $250 as and for said maintenance from the time of the birth of the child to September 19, 1870; and from and after said September 19, he shall pay the further sum of $1.50 per week, payable quarter yearly until the

further order of the court;" that the defendant should give to the complainant a bond with sufficient sureties, in the sum of $1000, conditioned " for the performance of said order of court, and also to indemnify and save harmless against all charges for the maintenance of said child the parents of said Elizabeth F. Young, and also the town of Raynham;" that he should "stand committed" until he gave said bond : and that the complainant should recover against him the costs of suit.

Immediately upon the reading of the order in open court the defendant, by his counsel, alleged exceptions thereto and to the right of the court to pass the same. These exceptions were argued at October term 1870.

*J. Brown*, for the defendant.

*S. R. Townsend*, for the complainant.

AMES, J. In proceedings under the Gen. Sts. *c.* 72, in relation to the support of bastard children, the complaint, the issue of the warrant, the arrest of the party accused, and his summary production before the magistrate, are according to the manner of criminal procedure. At all later stages of the case, until the time of the final order, the course of proceeding is the same as in ordinary civil actions. The defendant insists that, at this stage of the case, it becomes a criminal prosecution again, and the final order of the court is in the nature of a sentence, which cannot be passed unless he is personally present. In *Hodge* v. *Hodgdon*, 8 Cush. 294, 297, Shaw, C. J., in giving the opinion of the court, says that " on a final judgment, when the court make an order on the respondent for the payment of money, and where he is required by law to give a new bond with sureties, or be committed to prison until he give such new bond, he must be personally present, in order that the latter alternative may be complied with." He also says in substance that there is no provision that the court may issue an execution to enforce its judgment; and that the order that the defendant stand committed presupposes his personal presence. In *Towns* v. *Hale*, 2 Gray, 199, the court decided that, if the defendant was attending court at the passage of the final order, and surrendered himself to be committed for not complying with it, it was a fulfil-

ment of the condition of the original bond. Mr. Justice Dewey remarks, in giving the opinion of the court, that, " on the fina. judgment, the party must of course be present and give the required new bond, or be committed to prison until he give such bond."

It is to be remembered, however, that the two cases above quoted were decided under the Rev. Sts. *c.* 49, and that the statute now in force has made a great change in the law regulating proceedings of this nature. As the law then stood, no order of affiliation could be passed until after a verdict of guilty. *Jordan* v. *Lovejoy*, 20 Pick. 86. A default was merely a breach of the original bond. If the defendant did not appear, the court could render no judgment, nor make any order, and could only enter his default. The prosecution in that case was at an end, and the complainant's only remedy was upon the bond. But under the present statute, (Gen. Sts. *c.* 72, § 7,) it is provided that " if the jury find him guilty, or if he is defaulted, he shall be adjudged by the court to be the father," " and shall stand charged with the maintenance," &c., " in such manner as the court shall order, and shall give bond with sureties to perform said order; " " and he may be committed to prison until he gives such bond." Under the present law, therefore, the default is a confession by the defendant of all that could be found against him by a verdict of guilty, and the court is expressly authorized, upon his default, (that is to say, in his absence,) to render judgment and to pass the final order. If the final order is good when the record shows that he is not in court, on the ground that his default is a confession of his guilt, it apparently must be equally good when his guilt is made certain by the verdict of the jury. The case, even at this stage of it, is still a civil action. It is true that the final judgment of the court, from the necessity of the case, differs materially from the ordinary form of judgment at common law in a civil proceeding, and more nearly resembles a decree for alimony in a suit for divorce, or an order for periodical payments in an equity suit. It is hardly correct to say that the order is alternative, in the sense of requiring one of two things, of which one is to be the equivalent of the other

The substance of the order is, that he give the required bond; and the commitment is merely to compel him to give it. If he were present in court, and the order were that he stand committed, he would be taken into custody, but a *mittimus*, or warrant, or a certified copy of record, would still be necessary to justify his imprisonment, and to show how it might be terminated. It is not easy to see why the court cannot issue appropriate process to compel a compliance with an order, which it can lawfully pass in the absence of the party; or why a party could not as well be arrested, wherever he may be found, under such an order, as he could upon an execution in common form. The statute provision is, not that he stand committed, but that he may be committed, and the order to that effect may be passed upon his default, that is, in his absence. When imprisoned for noncompliance with the order, he has the benefit, after the expiration of ninety days, of the laws for the relief of poor prisoners committed on execution. Gen. Sts. *c.* 72, § 11.

Under the law as it now stands, we find nothing that renders it indispensable that the defendant should be actually present when the final order is passed. The bond which he is ordered to give is for the benefit of the complainant, and also for the indemnity of other possible parties in certain contingencies, but there is no direction that the bond be delivered to the clerk or made a part of the record of the case. We think therefore that the order passed in this case is valid, and that, although it directs that the defendant stand committed, instead of the statute phrase that he " be committed," this difference of phraseology is unimportant.

The bond which he has been ordered to give appears to be such as the statute requires. In what mode it can be made use of by the town of the complainant's settlement there is no occasion at present to inquire. The payments are of course to be hers until such town may become entitled to claim them. The provision that they are to continue until further order of court is for his benefit, in order that upon proper application he may avail himself of any sufficient legal reason for their reduction or discontinuance.

We see no reason why the complainant, as the prevailing party, should not recover her costs. *Exceptions overruled.*