COMMONWEALTH vs. EDWARD J. LOBO
(and three companion cases[1]).

Suffolk.  November 3, 1981. — March 2, 1982.

Present: WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Bastardy.  Parent and Child,* Support of illegitimate child.  *Practice, Civil,* Support of illegitimate child.  *Practice, Criminal,* Support of illegitimate child.

Review of the statutory provisions for the support of children, born both in and out of wedlock, set out in G. L. c. 273, §§ 1-18.  [441-445]

A proceeding under G. L. c. 273, § 12, to adjudicate paternity of an illegitimate child is a civil proceeding, although quasi criminal in form. [445-448]

In a proceeding under G. L. c. 273, § 12, to adjudicate paternity of an illegitimate child, the Commonwealth is a proper party to bring the complaint.  [448-449]

An arrest warrant may be issued in a proceeding under G. L. c. 273, § 12, to adjudicate paternity of an illegitimate child, where the accused fails to appear after the issuance of a summons.  [449]

In a proceeding under G. L. c. 273, § 12, to adjudicate paternity of an illegitimate child, the judge of the primary court may impose a pendente lite order for child support pending the outcome of the trial de novo claimed by the defendant.  [449-450]

On appeal from an adjudication of paternity of an illegitimate child at a time when G. L. c. 273, § 12, provided that an appeal by the father was to the Superior Court, and prior to the enactment of St. 1981, c. 92, amending c. 273, § 12, to provide for an appeal to a District Court jury of six session, the catchall provision of G. L. c. 278, § 18, together with the criminal aspects retained by the Legislature in c. 273, § 12, was such that appellate jurisdiction was properly before a jury of six session.  [450-451]

In a proceeding to adjudicate paternity of an illegitimate child under G. L. c. 273, § 12, there is no right to appeal questions of law to the Appellate Division.  [451-452]

_____

[1] Two are against David Murray; one is against Joseph Trusty.

After a final adjudication of paternity of an illegitimate child under G. L. c. 273, § 12, or after final conviction for failure to support an illegitimate child under c. 273, § 15, the judge may enter an order for the repayment to the Department of Public Welfare of money expended by it for the support of a minor child as "accrued maintenance" [452]; a retroactive payment order made after a final conviction of nonsupport and limited to a period of six years immediately preceding the commencement of the action under c. 273, § 15, is permissible [452-453]; however, reimbursement payments of arrearages claimed to have been incurred prior to an adjudication under c. 273, § 12, are impermissible [453].

COMPLAINTS received and sworn to in the Dorchester Division of the District Court Department, one on May 15, 1980, one on January 28, 1981, and two on March 3, 1981.

Upon appeal to the Boston Municipal Court Department for trial by jury of six, questions of law were reported by *Grabau*, J., to the Appeals Court. The Supreme Judicial Court ordered direct review on its own initiative.

*John J. Courtney* for Edward J. Lobo (*John J. McArdle*, for Joseph Trusty, with him).

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

*Alan M. Rubin* for David Murray, submitted a brief.

LIACOS, J.   Seven questions arising from these cases are before us on a report, prior to trial, to the Appeals Court by a judge of the jury of six session of the Boston Municipal Court. Mass. R. Crim. P. 34, 378 Mass. 905 (1979).[2] We transferred the report here on our own motion. We answer questions reported as to certain sections of our General

[2] Commonwealth *vs.* Carmen Mayo, which was originally included in the cases reported, was later consolidated with another case which raises issues concerning the statute of limitations in paternity cases. See *Commonwealth* v. *Gruttner, post* 474 (1982).

Laws dealing with nonsupport and illegitimacy. G. L. c. 273, §§ 12[3] & 15.[4]

The judge stated that in "the numerous cases pending in this court there is no uniformity in the manner in which sections 12 and 15 of ch. 273 are being interpreted." For this reason, and because of the uncertainty generally surrounding the meaning of the statutory pattern for the support of children of unwed parents, we included these cases in the package of opinions on the subject which we discuss today.[5]

---

[3] General Laws c. 273, § 12, as in effect during the time periods relevant to this case, provided: "Proceedings to determine the father of a child born to an unmarried woman shall be begun, if in the superior court, in the county in which is situated the place where the alleged father or the mother of the illegitimate child lives, and if begun in a district court, in the court having such place within the judicial district. If the alleged father pleads guilty or nolo contendere, or is found guilty, the court shall enter a judgment adjudging him the father of the child; but such adjudication shall not be made after a plea of not guilty, against the objection of the alleged father, until the child is born or the court finds that the mother is at least six months pregnant. At the sitting when such adjudication is made by a district court, if made after a plea of not guilty, the alleged father may appeal therefrom to the superior court as in other criminal cases. The adjudication, whether any sentence be imposed or not, shall be final and conclusive unless an appeal therefrom be taken as hereinbefore provided, or, if such adjudication be made by the superior court, unless set aside upon an appeal taken not later than three days thereafter under section twenty-eight of chapter two hundred and seventy-eight or upon exceptions. Such adjudication may be entered by the superior court notwithstanding exceptions have been alleged or an appeal has been taken. The court making the adjudication may within one year therafter grant a new trial for any cause." G. L. c. 273, § 12, as appearing in St. 1977, c. 848, § 5.

After the appeals in this case were entered in the jury of six session, § 12 was amended by St. 1981, c. 325. See note 21, infra.

[4] General Laws c. 273, § 15, as amended through St. 1979, c. 621, § 2, provides in part: "Any parent of an illegitimate child, whether begotten within or without the commonwealth, who neglects or refuses to contribute reasonably to its support and maintenance, shall be guilty of a misdemeanor. If there has been any final adjudication of the paternity of the child, such adjudication shall be conclusive on all persons in proceedings under this section; otherwise, the question of paternity shall be determined in proceedings hereunder. . . . The duty to contribute reasonably to the support of such child shall continue during its minority."

[5] The other opinions in this group are: Commonwealth v. Dias, post 455 (1982) (applicability of doctrines of double jeopardy and collateral

All the cases reported here began as actions for nonsupport under § 15.[6] The facts of each case are as follows.

*Commonwealth vs. Edward J. Lobo.*[7] Sometime after a complaint was issued charging the defendant with nonsupport under § 15, the action was redesignated a proceeding under § 12.[8] The defendant appeared pro se, pleaded not guilty, but admitted to sufficient facts to convict, at a bench trial in the District Court. He was adjudicated the father of the child and the judge entered a pendente lite order of $75 a week, which included $5 a week for "arrears." The defendant's appeal was entered in the jury of six session of the Boston Municipal Court on April 10, 1981.

*Commonwealth vs. Joseph Trusty.* On January 28, 1981, the mother of a two and one-half year old child, in conjunction with an employee of the Department of Public Welfare, obtained a complaint under § 15 against this defendant. Trusty was adjudicated the father of the child and was found "guilty" after a jury-waived hearing in the District Court. He was ordered to pay $30 a week, plus $10 a week for "ar-

---

estoppel to actions for the adjudication of paternity and for failure to support; G. L. c. 273, §§ 12 & 15); *Commonwealth* v. *Chase, post* 461 (1982) (nature of support orders awarded after conviction under G. L. c. 273, § 15, for failure to support); *Commonwealth* v. *Gruttner, supra* (statutes of limitation in illegitimacy proceedings).

[6] For reasons that are unclear from the record, two of the actions were transformed into § 12 proceedings for the adjudication of paternity and the entry of support orders. No such transformation was effected in the third case, against the defendant Trusty. It was nevertheless included in the report, which focuses almost entirely on issues related to § 12.

[7] The defendant was charged in two complaints for fathering two children, age five and one-half months and three years respectively, with the same mother. Both complaints are identical in form and only one was reported.

[8] The face of the complaint was changed by striking the word "nonsupport" and the section number 15 and by inserting in place of the latter the section number 12. The complaint continued to allege, however, that the defendant, not being the husband of the complainant, did "beget her with child . . . and . . . has refused and neglected to contribute to the support and maintenance of said child against the peace of said Commonwealth and the form of the statute."

rears." His appeal, taken March 13, 1981, was also entered in the jury of six session of the Boston Municipal Court.

*Commonwealth vs. David Murray.* The defendant was charged under § 15 with failure to support two illegitimate children, who were then three and one-half and five years of age. The defendant was defaulted, and an arrest warrant issued, after he failed to answer a summons for his appearance. He was arrested and arraigned on March 2, 1981. Prior to trial, the judge dismissed the allegations of nonsupport.[9] Murray was adjudicated the father of the children and appealed. The appeal was entered in the jury of six session of the Boston Municipal Court.

The questions reported by the judge are as follows:

"(1) Does M.G.L. Ch. 273, sec. 12 state a civil cause of action despite language in that section regarding the imposition of a sentence after an adjudication of paternity?

"(2) Does a defendant charged under Ch. 273, sec. 12 have a right of appeal to the Jury of Six Session (M.G.L., Ch. 218, secs. 26A and 27A) or to the Superior Court Department as indicated in Ch. 273, sec. 12?

"(3) Does a defendant have a right to appeal a question of law under Ch. 273, sec. 12 from the primary court to the Appellate Division for resolution?

"(4) If Ch. 273, sec. 12 states a civil cause of action is the Commonwealth of Massachusetts a proper party to bring the complaint?

"(5) Can a trial justice of a primary court impose a *pendente lite* order under Ch. 273, sec. 12 after the defendant exercises his right to appeal the adjudication of paternity pending the outcome of the trial de novo?

"(6) Can a warrant be issued for the arrest of a defendant under Ch. 273, sec. 12 where he fails to appear after the issuance of a summons?

"(7) Does an order for the repayment to the Department of Public Welfare of money expended by it for support of

---

[9] The face of both these complaints was changed. See note 8, *supra*. In addition, the allegation of nonsupport was struck from the body of one complaint.

the minor child following a final adjudication of paternity violate a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution?"

Before proceeding to answer the questions reported, we detour for an overview of the statutory provisions for the support of children, born both in and out of wedlock, as they were in effect and material to the present cases. For the purposes of our discussion, the relevant portions of c. 273 are §§ 1 through 18.

In 1911 the Legislature passed the Uniform Desertion Act, which is now codified as G. L. c. 273, §§ 1-10. St. 1911, c. 456. Sections 1 through 10 apply to the failure of a parent to support his or her legitimate children. We examine them first because, by the terms of G. L. c. 273, § 16,[10] as appearing in St. 1977, c. 848, § 6, the penalties, orders, and payments provided under §§ 1 through 10 are applicable to proceedings under §§ 12 through 18, which deal with the obligations of parents of illegitimate children. We are guided in our inquiry by the necessity of harmonizing, as closely as possible, the procedures governing the provision of support for illegitimate children with the procedures established for obtaining support for legitimate children. *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977). See *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978); G. L. c. 273, § 10. We make such an effort despite the difficulties posed by the failure of the Legislature to clarify the statutory scheme when it amended G. L. c. 273 subsequent to our decision in *Commonwealth* v. *MacKenzie*, 368 Mass. 613 (1975). See St. 1977, c. 848.

*G. L. c. 273, §§ 1-10 (legitimate children).* Section 1 of c. 273 provides for punishment "by a fine of not more than

---

[10] General Laws c. 273, § 16, states: "After the adjudication and the birth of the child, in proceedings under section twelve, or after conviction, in proceedings under the preceding section [§ 15], the alleged father shall be subject upon the original complaint or indictment in such proceedings to penalties and orders for payments similar to those provided by the first ten sections of this chapter; and the practice established thereby shall, so far as applicable, apply to any proceedings under sections twelve to eighteen, inclusive."

five hundred dollars or by imprisonment for not more than two years, or both" of "[a]ny . . . parent . . . who unreasonably neglects or refuses to provide for the support and maintenance . . . of his minor child." G. L. c. 273, § 1, as appearing in St. 1977, c. 848, § 2. Under § 3 the court is authorized to utilize the criminal probation collection system to collect fines imposed in proceedings under § 1. A probation officer is empowered by § 3 to make payments to whoever is "actually supporting" the child.

Section 4[11] makes provision for the fashioning of pendente lite orders, the violation of which is punishable "as for a contempt by the court before which the case is then pending." If such order is made by a District Court judge, the taking of an appeal does not vacate it. See *Kelley, petitioner*, 292 Mass. 198, 199-200 (1935) (violation of c. 273, §§ 1-4, is a crime, and punishment, by contempt, for failure to comply with pendente lite order is constitutional).

Under § 5, as most recently amended by St. 1979, c. 621, § 1, the court is empowered to order a defendant who pleads guilty or nolo contendere, or who is convicted under § 1, "to pay certain sums periodically, for a term not exceeding six years," to a probation officer, for disbursement as in § 3. Evidence of a voluntary support agreement, previously executed, is admissible and, if the court finds that the terms are reasonable, an order may include, where appropriate, any arrearages due under the agreement. Section 6 provides for release of a defendant from custody on

---

[11] General Laws c. 273, § 4, as appearing in St. 1977, c. 848, § 3, provides: "The district court, at any time after arraignment and before an appeal from such court is perfected by entry in the superior court, and the superior court at any time after such entry and before final determination of the case, may, upon motion of the complainant or district attorney and upon notice to the defendant, enter such temporary order as may seem just, providing for the support of the spouse or children, or both, pendente lite, and said order, wherever made, shall continue in force until modified or revoked by the court before which the case is pending. If any such order is made by a district court, an appeal to the superior court shall not vacate such order. Violation of an order made by either court may be punished as for a contempt by the court before which the case is then pending."

recognizance or bail. Bail that is forfeited may be ordered paid to the probation department for disbursement under § 5.

As to prosecutions begun under § 1, § 7 states in part that "[n]o other or greater evidence shall be required to prove the marriage of the husband and wife, or that the alleged father is the parent of the child, than may be required to prove the same facts in a civil action." G. L. c. 273, § 7, as appearing in St. 1977, c. 848, § 4.

*G. L. c. 273, §§ 12-18 (illegitimate children).* Turning our attention to §§ 12 through 18, we are faced immediately with the major difference between these sections and the preceding ones: the necessity of an adjudication of paternity under § 12 or § 15.[12] Section 12A makes provision for the administration of blood grouping tests, on motion of the alleged father, in any proceeding to determine the question of paternity. Cf. *Commonwealth* v. *Possehl*, 355 Mass. 575 (1969) (State payment of blood grouping tests for indigent defendant in paternity adjudication). See also *Little* v. *Streater*, 452 U.S. 1 (1981). Such provisions are obviously necessary because, unlike the situation in the case of legitimate children, the paternity of the father is not presumptively established by the fact of marriage.

Under § 13, after paternity has been determined, the court is empowered to continue the case until the child is born, notwithstanding other laws limiting adjournments or continuances. The court may order payment, to the mother or to a probation officer, of the expenses of pregnancy and confinement. Failure to comply with such orders is punishable, as contempt of court, by a term of imprisonment not to exceed two months. After the adjudication of paternity, § 14 authorizes the court, "as justice and the welfare of the child require," to make orders, binding on all parties, for the care and custody of the child.[13]

---

[12] See notes 3 & 4, *supra*.

[13] We note that G. L. c. 273, §§ 12-14, contemplate an orderly progression of events, the end result of which is an order for the support of the child. In this scheme of things, a timely adjudication of paternity, coupled with a support order, would place the child of unwed parents on vir-

Section 15,[14] like §§ 1-4 as to a legitimate child, makes the neglect or refusal, by a parent of an illegitimate child, to contribute reasonably to his or her support and maintenance, a misdemeanor. In addition, this section makes the duty of support a continuing one during the minority of the child.

With this overview of the pertinent provisions of c. 273 in mind, we proceed to the questions reported.

*Questions (1), (4), and (6).* These questions arise, not surprisingly, with regard to a statutory scheme which has undergone several marked transformations in this century. At common law, there was no legal obligation of the father to support his illegitimate child. *Davis* v. *Misiano,* 373 Mass. 261, 263 (1977). *Commonwealth* v. *Dornes,* 239 Mass. 592, 593-594 (1921). But see *Cahill* v. *State,* 411 A.2d 317, 320 (Del. Super. Ct. 1980) (suggesting that the duty did exist at common law). Such a duty was nevertheless imposed by statute in this Commonwealth as early as 1692, see Province Laws 1692-1693, c. 18, § 5, the purpose of a "bastardy" proceeding being "to redress . . . a civil injury . . . [and] to compel the putative father to aid the mother in the support and maintenance of the child." *Hill* v. *Wells,* 6 Pick. 104, 106-108 (1828). While such proceedings were recognized to contain elements of both civil and criminal actions, *id.* at 106-107, they were held to be, in substance, civil suits. See *Corcoran* v. *Higgins,* 194 Mass. 291, 292 (1907); *Young* v. *Makepeace,* 103 Mass. 50, 53, 56-57 (1869).

With the passage of St. 1913, c. 563,[15] "the statutes of the Commonwealth [began to express] in a criminal context a father's responsibility for fathering an illegitimate child."

---

tually the same footing as the legitimate child. At that point, a failure to comply with the order would be punishable under § 15.

[14] Quoted in note 4, *supra.*

[15] Chapter 563 "was enacted primarily to further the interests of the child by requiring the father to contribute reasonably to its support so that the child would not become a public charge." *Vivori* v. *Fourth Dist. Court of Berkshire,* 323 Mass. 336, 338 (1948).

*Commonwealth* v. *MacKenzie, supra* at 614. See *Commonwealth* v. *Dornes, supra* at 594; *Commonwealth* v. *Mekelburg,* 235 Mass. 383 (1920). These statutes, later codified as G. L. c. 273, §§ 11-19, made the begetting of an illegitimate child a misdemeanor under § 11 and made "the non-support of such a child a distinct and continuing offence" and a misdemeanor under § 15. *Commonwealth* v. *Dornes, supra.* See *Commonwealth* v. *Mondano,* 352 Mass. 260, 261 (1967); *Vivori* v. *Fourth Dist. Court of Berkshire,* 323 Mass. 336, 337-338 (1948); *Commonwealth* v. *Micheli,* 258 Mass. 89, 91 (1927).

Until 1977, § 12 provided the mechanism for appeals from convictions for "begetting" under § 11. With the repeal of § 11, by St. 1977, c. 848, § 7, proceedings to determine the father of the child of unwed parents for purposes of imposing support orders were henceforth governed by § 12. Prior to the repeal of § 11, however, we had occasion to examine the criminal sanctions provided in § 11 for the act of begetting. We concluded that, while a criminal conviction and sentence could not constitutionally be imposed, a complaint under § 11 "may be used to initiate a proceeding to adjudicate paternity . . . [and to provide] a basis for an order directing the father to contribute toward pregnancy expenses . . . and the support of the child." *Commonwealth* v. *MacKenzie, supra* at 618. Having "de-criminalized" § 11, we nevertheless stated that, absent any action to the contrary by the Legislature, "[a]ny proceeding under § 11 should be treated in all respects as a criminal proceeding . . . . For example, paternity must be established beyond a reasonable doubt and the alleged father may not be compelled to testify." *Id.* at 619 n.5. See *Davis* v. *Misiano, supra* at 263-264. Cf. *Commonwealth* v. *Possehl, supra* (State payment of blood grouping tests for indigent defendants).

With the exception of changes designed to enable c. 273 to withstand constitutional challenge, the Legislature has not yet acted to alter substantially the form of paternity proceedings. Thus, the "criminal attributes . . . retained in

§ 11," *Davis* v. *Misiano, supra* at 264, after *MacKenzie* and prior to repeal, were simply engrafted to § 12 by the Legislature in 1977. These procedural trappings of a criminal trial, in addition to the criminal law terminology retained in § 12,[16] lead us to characterize proceedings under G. L. c. 273, § 12, as "quasi criminal" in form, but civil in nature.

We distinguish the nature of an action from its procedural format in order to make clear our use of the term "quasi criminal." Where the action is quasi criminal in form, but the purpose of the proceeding does not contemplate punishment, it is by nature civil, or remedial. Cf. *Custody of a Minor*, 375 Mass. 733, 746 (1978) (where care and custody proceedings under G. L. c. 119 no longer have as "governing principle" the "discipline" of the parent, proceedings are "civil and not criminal in nature"); *Commonwealth* v. *Lamb*, 365 Mass. 265, 269 (1974) (proceedings under G. L. c. 123A, for commitment of sexually dangerous persons, are "civil and nonpunitive in nature"). Given that the support and maintenance of children should be shared by those responsible for bringing them into the world, the primary object of a § 12 proceeding is to identify the father in order to impose on him his obligation and to protect the public from the cost of maintenance. See *Vivori* v. *Fourth Dist. Court of Berkshire, supra* at 337-338. Compare *Commonwealth*

---

[16] Section 12, as in effect during the relevant time periods, provided that if the alleged father "pleads guilty or nolo contendere, or is found guilty, the court shall enter a judgment adjudging him the father of the child," which judgment, "whether any sentence be imposed or not, shall be final and conclusive unless an appeal therefrom be taken as hereinbefore provided." Even if we assume such language to be merely vestigial in light of *Commonwealth* v. *MacKenzie*, 368 Mass. 613 (1975), proceedings under § 12 are sufficiently imbued with criminal character to be classified as quasi criminal in form. An action is quasi criminal in *nature* where, in addition to having aspects of criminal procedure, it may be seen to have an unseverable and dominant punitive element incorporated as well, either as a sentence, penalty, or fine. Cf. *Commonwealth* v. *One 1972 Chevrolet Van, ante* 198, 200-202 & n.2 (1982) (forfeiture proceedings pursuant to G. L. c. 94C, § 47, are quasi criminal in nature); *Commonwealth* v. *Nine Hundred and Ninety-two Dollars*, 383 Mass. 764, 765 n.2 (1981).

v. *Lanoue,* 326 Mass. 559, 562 (1950). We have previously held that such a purpose in practice made the "decriminalized" version of c. 273, § 11, remedial and in essence civil. *Sullivan* v. *Commonwealth,* 383 Mass. 410, 412 (1981). See *Commonwealth* v. *Dias, post* 455 (1982). Compare *Custody of a Minor, supra.* The same reasoning applies to c. 273, § 12. We hold that a paternity proceeding conducted pursuant to G. L. c. 273, § 12, is by nature a civil proceeding, the purpose of which is not to find and punish a criminal adversary of the State, but rather to determine whether the accused is the father of the illegitimate child, and, if so, what shall be the reasonable support obligation imposed on him.

The Legislature has chosen, in enacting G. L. c. 273, to utilize the machinery of the criminal justice system for its enforcement. Compare *Little* v. *Streater,* 452 U.S. 1, 11-12 (1981). Much, though not all, of the panoply of criminal procedural protections is extended to the putative father.[17] These procedural trappings of a criminal trial are not, as we have said above, sufficient to make § 12 proceedings strictly criminal.[18] Thus, we conclude the answer to question (1)

---

[17] Among these protections, a putative father is afforded the right to remain silent and the right to require proof of his paternity beyond a reasonable doubt. See *Commonwealth* v. *MacKenzie, supra* at 619 n.5. He is also given the right to require a blood grouping test and, if indigent, to have the cost paid by the Commonwealth. G. L. c. 273, § 12A. *Commonwealth* v. *Possehl,* 355 Mass. 575 (1969). He receives, by statute, the right to an appeal de novo. The full panoply of criminal rights is not, however, available. For example, protection against double jeopardy is not afforded a defendant in § 12 proceedings. *Commonwealth* v. *Dias, supra.*

[18] Given the "decriminalization" of the adjudication of paternity, we note the irony of the fact that these questions arise as to the nature of § 12 proceedings begun in the Commonwealth while having been settled some time ago with respect to similar proceedings begun elsewhere and brought here under G. L. c. 273A, the Uniform Reciprocal Enforcement of Support Act. This court held in *M_____* v. *W_____,* 352 Mass. 704, 706 (1967), that such proceedings to determine the contested issue of paternity, begun in a District Court, are civil, and "the special civil remedy (given to District Courts in Massachusetts) under c. 273A is not in terms dependent upon compliance with the requirements of any other

is that, because a "conviction" under it is not followed by a fine or by imprisonment, but instead by a support order, § 12 sounds civilly though proceedings under it are quasi criminal in form. The answer to question (1) is "Yes."

The issue raised by question (4) is whether, if G. L. c. 273, § 12, "states a civil cause of action . . . the Commonwealth of Massachusetts [is] a proper party to bring the complaint." Having concluded that § 12 is, in nature, a civil proceeding, we answer question (4) "Yes," for the following reasons. At the outset, it is clear that the Commonwealth properly is a party to a large number of actions civil in nature. See, e.g., G. L. c. 258; G. L. c. 119; G. L. c. 123A. In regard to an analogous child support proceeding, we have noted that the Uniform Reciprocal Enforcement of Support Act, G. L. c. 273A, has as its purpose "to provide an effective procedure to compel performance by one under a duty to support dependents in another State." *M_____ v. W_____*, 352 Mass. 704, 706-707 (1967), quoting from *Phillips* v. *Phillips*, 336 Mass. 561, 562-563 (1958). Under G. L. c. 273A, § 5, the Commonwealth has the right to commence support proceedings, in the name of the person entitled to support. Further, under G. L. c. 18, § 21, the Department of Public Welfare is subrogated to the rights of any welfare recipient and may commence civil or criminal proceedings in its own name, or in the name of the recipient, regarding support. Similar provisions are found in G. L. c. 118E, § 21E (medical care and assistance payments), and G. L. c. 118, § 3 (aid to dependent children). Under G. L. c. 273, §§ 12-18, the Legislature has enacted a statutory scheme not only to protect the interests of illegitimate children, but also those of the State. Historically, this legislation is "connected with the system of poor relief," and a main object of such legislation "has been to provide secur-

procedures provided by other statutes [in Massachusetts] for enforcement of the same support obligation. Chapter 273A provides its own procedures." *Id.* at 708-709.

ity for the [State] liable to support the . . . child." *Common-wealth* v. *Dornes,* 239 Mass. at 593-594.

In addition, "[t]he statutory purposes advanced by the Commonwealth [to] support a paternity and child support statute . . . used to establish paternity and oblige the father to contribute toward pregnancy and childbirth expenses . . . [permit] the Legislature to focus statutory attention . . . on the fathers of illegitimate children." *Common-wealth* v. *MacKenzie,* 368 Mass. at 616-617. The Commonwealth is a proper party to the complaint.

For the same reasons, and in answer to question (6), the furnishing by the State of its name and its criminal justice machinery to compel performance of the duty to support dependent children necessarily comprehends the issuance of arrest warrants after the failure by a named party to comply with a summons. Cf. G. L. c. 276, §§ 25, 26.

*Question* (5). Perhaps the most important practical issue presented in this report concerns the authority of a judge of a primary court to impose a pendente lite order under § 12 when the defendant elects to exercise his right to a trial de novo on the issue of paternity. Defendant Lobo argues that the duty to support an illegitimate child does not arise until a final adjudication of paternity, since the duty is statutory and did not exist at common law. He argues that an appeal de novo has the effect of voiding the adjudication of the primary court, and hence an order based on that adjudication cannot be immediately enforceable. See *Mann* v. *Commonwealth,* 359 Mass. 661, 666 (1971). But see *Rubera* v. *Commonwealth,* 371 Mass. 177, 183 (1976) (fact that judge in bench trial found defendant guilty not a nullity for all purposes because of appeal).

The answer to the defendant's argument is found in the statute itself. The Legislature has made provision for temporary orders for the support of the child. General Laws c. 273, § 4, see note 11, *supra,* empowers a District Court judge to "enter such temporary order as may seem just . . . pendente lite" for the support of the child at any time after arraignment and before the entry of an appeal. The next to

the last sentence in § 4 specifically states that an appeal shall not vacate such order. By the terms of § 16, see note 10, *supra*, a judge in the primary court is empowered to enter pendente lite orders after an adjudication of paternity under § 12.[19]

The obligation of paying temporary support pending appeal of an adjudication of paternity works an obvious hardship on a defendant later determined not to be responsible for fathering the child. His chances of later recovering his money may be slim,[20] but we see in the statutory pattern a recognition by the Legislature that the interest primarily at stake in the paternity action is that of the child in need of support. Coupled with this is the fact that a § 12 proceeding is not criminal in nature. Compare G. L. c. 119, § 39I (filing of appeal from care and protection order does not stay the order appealed from); G. L. c. 120, § 20 (c) (during appeal of extension of commitment of juvenile to Department of Youth Services, juvenile remains under control of board). *Department of Youth Servs. v. A Juvenile*, 384 Mass. 784 (1981).

*Question (2).* At the time the appeals in this case were taken, § 12 expressly provided that "[a]t the sitting when such adjudication is made by a district court, if made after a plea of not guilty, the alleged father may appeal therefrom to the superior court as in other criminal cases."[21] See G. L. c. 212, § 6, prior to St. 1978, c. 478, § 117. The defendants have challenged the jurisdiction of the judge in the

---

[19] We note that the provisions of § 16 apply to temporary orders entered after an initial adjudication of paternity made under § 12 or § 15. Thus, pendente lite orders are applicable to § 15 proceedings. See *Commonwealth* v. *Chase, post* 468, 452-453 (1982).

[20] We recognize also that a defendant burdened by a pendente lite order of a judge at a bench trial is in that situation because he elected, under c. 218, § 26A, to waive what would have been an initial trial in a jury of six session. See *Costarelli, petitioner*, 378 Mass. 516, 518 (1979).

[21] Statute 1981, c. 92, amended § 12 to provide that the appellate jurisdiction would be in a jury of six session of the District Court. The amendment was not in effect at the time the appeals in this case were entered.

jury of six session to hear these cases. They request a transfer to the Superior Court. We are of the opinion that appellate jurisdiction is properly in the District Court jury of six session. The Court Reorganization Act (Act), St. 1978, c. 478, amended G. L. c. 218, § 27A, to create the jury of six session "for the purpose of hearing appeals by defendants" found guilty of criminal offenses in the District Courts. St. 1978, c. 478, § 189. By § 187 of the Act, G. L. c. 218, § 26, was amended to give the District Courts original jurisdiction over specifically enumerated offenses, including "all misdemeanors, except libels." Adjudications of paternity under G. L. c. 273, § 12, are not, however, included.

General Laws c. 278, § 18, was also amended, by § 302 of the Act, to read in pertinent part that, "[*n*]*otwithstanding any other provision of law,* a defendant after a finding of guilty, jury waived, in a district court . . . may appeal therefrom and shall thereafter be entitled to a trial de novo in a jury-of-six session" (emphasis supplied).

We think this catchall provision applies to adjudications of paternity. Although paternity is not a "crime" in the sense of the first sentence of § 18, sufficient criminal "trappings" have been retained by the Legislature in § 12 to indicate that it intended that these de novo appeals also go to the jury of six session. This conclusion is consistent with the action of the Legislature in later amending § 12 to allow for appeals to a jury of six. See note 21, *supra.* But see *Commonwealth* v. *Mack,* 10 Mass. App. Ct. 816 (1980) (appeal taken prior to the effective date of the Act). Such a "gap" as the temporary exclusion of § 12 adjudications from coverage by c. 218, § 26, is "virtually inevitable in any piece of legislation as complex as the court reorganization plan." *Commonwealth* v. *Germano,* 379 Mass. 268, 273 (1979).

*Question* (3). Although we have held that proceedings under § 12 are in essence civil, though in form quasi criminal, the appellate division is not the proper forum in which to bring an appeal from an adjudication. G. L. c. 231, § 108. Compare *M_____* v. *W_____,* 352 Mass. at

710 ("[t]he principal difference between a civil proceeding under c. 273A and a quasi criminal nonsupport prosecution [under G. L. c. 273, § 15] is that appellate review under c. 273A will be by the Appellate Division . . . rather than [as under c. 273] by . . . a jury trial de novo"). We are not inclined to hold otherwise in the absence of a clear statement by the Legislature. Furthermore, we note that recent amendments to § 12 disclose a legislative intention that questions of law continue to be decided as in other criminal cases. See St. 1981, c. 92, and St. 1981, c. 325.

*Question* (7). The last question reported asks whether, after a final adjudication of paternity, a judge may enter an order for the repayment to the Department of Public Welfare (department) of money expended by it for the support of a minor child. Since proceedings in these cases have been brought pursuant either to § 12 or to § 15, we answer the question with regard to both provisions of c. 273.

First, we recognize the power given, by statute, to the department to "take all lawful means which shall include, in appropriate cases, the institution of criminal proceedings, to compel all persons bound to support such . . . child or children to support them." G. L. c. 118, § 3, as amended through St. 1979, c. 393, § 69. See G. L. c. 18, § 21; 106 Code Mass. Regs. 305.033, 305.038, 305.090, & 305.100 (1979). Compare *Brady* v. *Brady,* 380 Mass. 480, 485 (1980). We conclude, in light of the statutory authorization, that the department is entitled to seek an order for repayment of money expended by it for the support of a child, as "accrued maintenance." See *Little* v. *Streater,* 452 U.S. at 4. We examine in turn both § 12 and § 15, in order to determine whether the entry of orders with retroactive effect is permissible after proceedings under each of these sections.

Proceedings under § 15 are discussed more fully in *Commonwealth* v. *Chase, post* 461 (1982). By the terms of our opinion in *Chase,* no obstacle, constitutional or otherwise, is presented to a retroactive payment order, made after a final conviction of nonsupport and limited to a period of six years next preceding the commencement of the action. By defini-

tion, a conviction for failure to support must encompass the possibility of retroactive orders. *Id.* at 470-471.

The same does not hold, however, for such orders made after an adjudication of paternity under § 12. As we have said earlier, see note 13, *supra,* we discern a legislative expectation that actions involving §§ 12-14 would be brought from a point a few months before, to one shortly after, the birth of the child. Under these sections, the expenses of the pregnancy and confinement of the mother are properly the subject of an order. Failure to comply with the order would be the basis for an action for nonsupport, or a contempt, or both. But to go further and to allow the imposition of retroactive support orders under § 12, is to adopt an interpretation of that section not consistent with the legislative scheme. A retroactive support order under § 12 would have to be based on a finding of a failure to support. Such a finding is reserved to proceedings under § 15. See *Commonwealth* v. *Chase, supra.*

Thus, since Commonwealth *vs.* Edward J. Lobo was transformed from a § 15 to a § 12 proceeding, that portion of the amount in the pendente lite order described as "arrears" was improper. In Commonwealth *vs.* Joseph Trusty, although the proceedings were held under § 15, the portion of the pendente lite order ascribed to "arrears" was also improper because it was made before a final conviction of nonsupport. See *Commonwealth* v. *Chase, supra.* This does not affect the remaining portion of these orders.

We summarize our answers to the questions reported:

Question (1): Yes.

Question (2): To the Jury of Six Session of the District Court Department.

Question (3): No.

Question (4): Yes.

Question (5): Yes.

Question (6): Yes.

Question (7): Orders for reimbursement of any kind may be made only after an adjudication that has become final under § 12 or after final conviction under § 15; but reim-

bursement payments of "arrearages" claimed to have been incurred prior to an adjudication under § 12 are impermissible.

The cases are remanded to the jury of six session of the Boston Municipal Court for proceedings in accordance with this opinion.

*So ordered.*