COMMONWEALTH vs. JAMES A. KENNEDY.

Worcester. January 6, 1983. — May 31, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Evidence*, Relevancy and materiality, Settlement offer, Paternity, Prior
    inconsistent statement. *Parent and Child*, Support of illegitimate
    child.

At the trial of a complaint seeking an adjudication of paternity and a de-
    termination that the defendant had failed to contribute to the support
    of his illegitimate child, the judge did not err in permitting the com-
    plainant to testify that the defendant had offered to pay for an abor-
    tion. [309-313]
This court found that no error at the trial of paternity and nonsupport
    proceedings resulted from exhibition of the seventeen month old child
    in question to the jury, but it expressed the view that in future cases a
    judge should not permit exhibition of a child to a jury in the absence of
    expert testimony concerning the probability that specific physical
    characteristics of the child were inherited from the defendant.
    [313-314]
At the trial of a paternity and nonsupport case, the judge did not err in
    limiting testimony concerning the complainant's prior inconsistent
    statements to the issue of her credibility. [314-315]
This court declined to disturb a support order requiring the defendant
    to pay $125 weekly for the support of his illegitimate child and to pro-
    vide for the payment of the child's medical and dental bills where the
    record was insufficient to permit the court to judge the reasonableness
    of the order, and where the financial obligation imposed on the de-
    fendant was not so great as to make the order excessive on its face.
    [315]

COMPLAINT received and sworn to in the Central
Worcester Division of the District Court Department on
August 22, 1980.

The case was tried before *Compagnone*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

*Conrad W. Fisher* for the defendant.

*Jane Shepard,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his conviction by a six-person jury of neglecting to support an illegitimate child and from an order requiring him both to pay $125 weekly for the support of the child and to provide, through insurance and otherwise, for the payment of all medical and dental bills of the child. The complaint sought an adjudication of paternity against the defendant (G. L. c. 273, § 12) and a determination that the defendant neglected and refused to contribute reasonably to the support and maintenance of his illegitimate child (G. L. c. 273, § 15). The defendant argues that the judge erred in various evidentiary rulings and further contends that the support order was so excessive as to constitute an improper punishment. We affirm the conviction and the order for support.

The defendant and the child's mother, whom we shall call the complainant, met at the hospital where they both worked. At trial, both admitted engaging in sexual intercourse at various times between June and the latter part of September, 1979. The child was born on June 1, 1980. The complainant testified that she had not had sexual intercourse during this time with any other man. The defendant testified that the complainant had told him that she was sterile. He also testified that, in any event, he used a condom every time they had intercourse. He agreed that condoms are not 100% safe as contraceptives.

In circumstances we shall describe more fully, the judge permitted the complainant to testify concerning the defendant's offer to pay for an abortion. He also allowed the child, who was then about seventeen months old, to be exhibited to the jury. The judge further ruled that prior inconsistent statements of the complainant were admissible only for the purpose of impeachment. We shall deal with the defendant's challenges to these three evidentiary rulings in order.

1. We consider first the defendant's argument that certain statements the complainant testified he had made were

offers in compromise and thus were inadmissible. The complainant was permitted to testify, over objection, that after she informed him that she was pregnant, the defendant told her that he believed in abortion. She replied that she did not. Later, however, she telephoned the defendant and discussed the possibility of having an abortion. He suggested she go to Boston to have the abortion and said he would pay for it. Subsequently, she telephoned him again and said that she was not going to have an abortion. He told her that, if she changed her mind, he would pay for the abortion. The defendant testified, on the other hand, that he offered as a friend to help her in any way he could but that he did not suggest that she have an abortion.

The defendant argues that evidence of his offer to pay for an abortion was evidence of an offer in compromise that was improperly admitted against him. In the normal course, a statement by a party is relevant to an issue of fact if it renders the desired inference more probable or less probable than it would be without the evidence. See *Poirier* v. *Plymouth,* 374 Mass. 206, 210 (1978); Proposed Mass. R. Evid. 401. On objection, the judge must make an initial determination whether the jury could find that a party's statement was an admission. See Proposed Mass. R. Evid. 104(a). Certainly, an offer to pay for an abortion has some tendency to prove that the speaker thought he was the father of the unborn child.[1] Thus, apart from the issue whether the offer should be excluded as a matter of policy, there would be a jury question whether the offer was made only out of kindness as a friend or, at least in part, as an admission of paternity.

The weight of authority in this country favors admitting evidence that a putative father offered to pay for or to arrange

---

[1] In *Phillips* v. *Hoyle,* 4 Gray 568, 569 (1855), this court upheld the admission of testimony that the defendant inquired of the witness "if he knew of any woman who would nurse the child if he could make a settlement of the case." We rejected the defendant's claim that the defendant's inquiry was an offer of compromise. At that time, a bastardy proceeding was treated entirely as a civil rather than as a criminal proceeding. See *Commonwealth* v. *Lobo,* 385 Mass. 436, 444 (1982).

for an abortion.  See *Swindle* v. *State,* 21 Ala. App. 462, 463 (1926); *Gatzemeyer* v. *Peterson,* 68 Neb. 832, 835 (1903); *State ex rel. Fitch* v. *Powers,* 75 S.D. 209, 212 (1954).  Cf. *Frazier* v. *McFerren,* 55 Tenn. App. 431, 439 (1964) (defendant purchased medicine intended to cause a miscarriage).[2]   These opinions were issued before the United States Supreme Court held in *Roe* v. *Wade,* 410 U.S. 113 (1973), that a woman, in certain circumstances, had a constitutional right to an abortion, but the reasoning of these opinions admitting the offer does not rest on the illegality of abortion.   Indeed, these opinions lack any analysis of the public policy interests underlying the admissibility of such offers.

An offer to pay for an abortion is, in a sense, an offer to compromise any future claim for support of the child.  Such an offer is different from the typical offer in compromise made in an attempt to settle a claim for an injury or for an alleged wrong that has already occurred.  See Proposed Mass. R. Evid. 409.  Here, the injury (nonsupport) had not yet occurred because the child was not yet born.  Causing the complainant to become pregnant was not in itself a crime nor was it grounds for a civil action.  The complainant could not resolve the matter by simply accepting funds offered by the defendant because to make an effective "settlement" of any future nonsupport claim, the complainant would have had to have taken active steps to obtain the abortion.  It is true, however, that there was a controversy and that the defendant's offer, if acted on, would have settled the matter.  But the differences between the offer made in this case and the typical offer in compromise require our consideration of reasons for admitting or excluding evidence of the defendant's offer.

---

[2] Evidence of a defendant's interest in a complainant's obtaining an abortion, but not involving an offer to pay for it, has been admitted in evidence.  See *Badder* v. *Keefer,* 100 Mich. 272, 273 (1894); *T.A.L.S.* v. *R.D.B.,* 539 S.W.2d 737, 739 (Mo. App. 1976); *People* v. *Mendel,* 10 A.D.2d 767 (N.Y. 1960).

The issue here is whether, as a matter of policy, evidence of the defendant's offer to pay for an abortion should be excluded. The justifications for excluding a typical offer in compromise are that (1) such an offer may not be an admission of wrongdoing but only an expression of a desire to settle the matter and (2) the law favors the compromise of disputes out of court. See 4 J. Wigmore, Evidence § 1061, at 36 (Chadbourn rev. 1972); McCormick, Evidence § 274, at 663 (2d ed. 1972); K.B. Hughes, Evidence § 532, at 749 (1961).[3] A decision to exclude the relevant evidence of a putative father's offer to pay for an abortion would make the jury's task more difficult in a case in which the only other evidence often will be the conflicting testimony of the complainant and the putative father.

The interest, if any, of the State in "settling" incipient nonsupport claims by encouraging offers to pay for an abortion differs significantly from its interest in encouraging typical offers of settlement of disputes. An offer to pay for an abortion, unaccompanied by an offer to pay the medical expenses for the delivery of the child and to pay for the support of the child, tends to influence the woman's choice as to whether to have an abortion or to carry the child to term. This court has said that, barring a compelling State interest, the law should take a neutral position on a woman's exercise of her constitutional right to decide whether to have an abortion. See *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629, 651, 654-655 (1981). Cf. *Taft* v. *Taft*, 388 Mass. 331, 334 (1983) (circumstances did not justify court order that a woman have an operation to assist in carrying a child to term). Indeed, it has been contended that the State

---

[3] Our discussion assumes, without deciding, that the parties could have made a settlement of the matter. See *Harrison* v. *District of Columbia*, 95 A.2d 332, 334 (D.C. 1953); *Fowler* v. *State*, 111 Ga. App. 856, 858 (1965); *Commonwealth* v. *Terry*, 275 Pa. Super. 184, 186-187 (1980). One might question, however, whether an agreement concerning support of a child could limit a father's obligation to support that child. See *Everett* v. *Everett*, 57 Cal. App. 3d 67, 69 (1976); *Tuer* v. *Niedoliwka*, 92 Mich. App. 694, 699 (1979).

should do what it can, within reason and within the limits of the Federal Constitution, to advance the State's interest in the protection of potential life. See *Moe* v. *Secretary of Admin. & Fin., supra* at 663 (Hennessey, C.J., dissenting). We see no overriding public policy justification for excluding the concededly relevant evidence of an offer to pay for an abortion.

The defendant's related objections are without merit. (a) Over objection, the mother was permitted to testify that, when she asked the defendant how he would feel about making payments to welfare, the defendant replied, "Well, if I have to, I have to." This was not an offer in compromise. (b) The judge did not abuse his discretion in admitting the complainant's testimony concerning the discussions about abortion. The subject was not so inflammatory that the testimony should have been excluded in spite of its relevancy. (c) The defendant could have, but did not, request a jury instruction that abortion was not an issue in this case. The judge was not obliged to give such an instruction on his own motion. In his closing argument, the prosecutor said abortion was not an issue.

2. The defendant objects to the showing of the child, then about seventeen months old, to the jury. The rule in this Commonwealth has long been that in the discretion of the judge the child may be exhibited to the jury in such a case and the youth of the child goes only to the weight of the evidence. *Scott* v. *Donovan*, 153 Mass. 378, 379 (1891). We adhere to our previous position for the purposes of this case.

The law on this subject across the country is far from uniform. See Annot., 55 A.L.R.3d 1087 (1974), and the discussion in *Dorsey* v. *English*, 283 Md. 522, 525 (1978). As the discussion in the *Dorsey* case indicates (*id.* at 524-525), Massachusetts is in a definite minority of States that, in the judge's discretion, allow a child of any age, even one so young as not to have "settled features," to be exhibited to the jury. A persuasive case can be made that generally a child should be exhibited to a jury only in conjunction with the testimony of a qualified expert who would

testify concerning the probability that specific physical characteristics of a child were inherited from the defendant. See *People in re R.D.S.*, 183 Colo. 89, 94 (1973); *Almeida* v. *Correa*, 51 Hawaii 594, 596-604 (1970).

Exhibition of the child to the jury may appeal to their sympathies and thus may create an irrelevant, prejudicial effect in favor of the child. The prospect of forming a valid conclusion concerning the parentage of the child by comparing him or her with a particular adult is doubtful.[4] For the future, in the absence of accompanying expert testimony, a judge should not permit a child to be exhibited to a jury. There might be an appropriate occasion for the child to appear before the jury for some other reason. See, e.g., *Elizabeth* v. *James*, 104 Misc.2d 1052 (N.Y. Fam. Ct. 1980) (ten year old child testified to his association with the putative father).

3. Of the defendant's remaining objections to the admission of evidence, only one needs extended discussion. All others were matters within the judge's discretion.

The judge properly limited testimony concerning the complainant's prior inconsistent statements to the issue of her credibility. At least as to the nonsupport proceeding, the complainant was not a party whose prior statements constituted admissions probative on the substance of the issues.[5] A victim of a crime is not a party and her extrajudicial statements are not admissible as probative evidence. See *Commonwealth* v. *Sanders*, 14 Gray 394 (1860); *People* v. *Carson*, 87 Mich. App. 163, 169 (1978); 4 J. Wigmore, Evidence § 1076, at 154 (Chadbourn rev. 1972). Compare Proposed Mass. R. Evid. 801(d)(1)(A) (a witness's prior inconsistent statement only if made under oath in certain pro-

---

[4] In his charge to the jury, the judge warned the jury to decide the case without any emotion engendered in favor of the innocent child.

[5] A paternity proceeding under G. L. c. 273, § 12, is now by nature a civil proceeding. *Commonwealth* v. *Lobo*, 385 Mass. 436, 447 (1982). But nonsupport proceedings under G. L. c. 273, § 15, must be treated as if they were criminal in nature. *Commonwealth* v. *Chase*, 385 Mass. 461, 463-464 (1982).

ceedings is not hearsay) with Cal. Evid. Code § 1235 (Deering 1966) (witness's prior inconsistent statement is not inadmissible hearsay because the witness is in court and available for examination or cross-examination).

4. The record is insufficient to permit us to pass on the reasonableness of the judge's order that the defendant pay $125 weekly for the support of the child and also pay for the child's medical and dental expenses. It is true that the parents of an illegitimate child should share the support and maintenance of the child, depending on their circumstances and applying the same standard to each. See *Commonwealth* v. *Lobo*, 385 Mass. 436, 446 (1982); *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 618 (1975). Nothing in the record shows the relative earnings and assets of the defendant and the complainant. We know the defendant is a physician and that the complainant worked in the admissions office at the hospital where the defendant was employed. We assume that the complainant has the custody of the child and must care for him or pay someone else to do so while she works. The financial obligation on the defendant is not so great as to be excessive on its face.

*Judgment affirmed.*

*Order of support affirmed.*