**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4360
_____

FREDERICO TAVARES,
*Petitioner*,

v.

ATTORNEY GENERAL,
*Respondent*

_____

Appeal from the Board of Immigration Appeals
Agency No. A36 684 822

_____

Argued September 14, 2010

Before: RENDELL, FISHER and GARTH <u>Circuit Judges</u>.
(Opinion Filed: September 24, 2010)

Uma N. Everett (Argued)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004

 <u>Counsel for Petitioner</u>

Christina Parascandola (Argued)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice

P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Counsel for Respondent

_____

**OPINION**

_____

GARTH, *Circuit Judge*:

In May 2000, Petitioner Frederico Tavares ("Tavares") was charged with removability as an alien convicted of an aggravated felony. The Board of Immigration Appeals ("BIA") ultimately ordered Tavares removed.

Tavares seeks to terminate the removal proceedings against him by arguing that, pursuant to former 8 U.S.C. § 1432(a), he derived U.S. citizenship through his mother's naturalization in 1990 because his father's paternity was not established by legitimation. If Tavares has not been legitimated, he is a U.S. citizen and cannot be deported.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

Tavares was born in Cape Verde in 1974. At the time of his birth, his mother, Maria Tavares ("Maria"), was not married to his father, Manuel Tavares ("Manuel"), who

2

was married at that time to another woman, Maria Landin ("Landin"). On Tavares' birth certificate, Manuel's name appears typed in the form which asks for Tavares' father's name. No signature appears on the form.

In 1981, Maria entered the United States as a lawful permanent resident. In 1982, Tavares, who was approximately eight years old at the time, joined his mother in the United States, entering as a lawful permanent resident. In 1985, Manuel came to the United States. In 1986, Manuel obtained a divorce from Landin, his then wife, in the Commonwealth of Massachusetts, and in 1987, Maria and Manuel married. Maria became a U.S. citizen in 1990, when Tavares was fifteen years old. In 1995, Manuel became a U.S. citizen.

In 1992, Tavares was convicted in Bristol Superior Court in Massachusetts of armed robbery. In May 2000, the INS charged Tavares with removability. Tavares requested termination of the proceedings, claiming he derived U.S. citizenship from his mother in 1990 because his paternity was not "established by legitimation," pursuant to former 8 U.S.C. § 1432(a)(3).[1] It is uncontested that Tavares has met the other necessary

---

[1] The relevant portion of 8 U.S.C. §1432(a) reads:
"A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions: . . . (3) [t]he naturalization of the parent having legal custody of the child where there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if (4) [s]uch naturalization takes place while such child is under the age of eighteen years; and (5) [s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the . . . parent

3

criteria for derivative citizenship under the statute: he was born out of wedlock in Cape Verde, his mother's naturalization occurred when he was under the age of 18, and he was residing in the United States as a lawful permanent resident at the time of the naturalization.

In October 2000, the Immigration Judge terminated the removal proceedings, finding that Tavares' paternity was not established under the laws of Massachusetts or Cape Verde. The BIA reversed and remanded, determining that the Immigration Judge had misinterpreted Massachusetts law. The BIA stated that it appeared that Tavares was legitimated under Massachusetts General Laws Chapter 190, Section 7.

On remand, a different immigration judge determined that Tavares was legitimated under the laws of Massachusetts. On appeal, the Board agreed that Tavares was legitimated under Massachusetts law because at the time of Maria's naturalization, Tavares' parents had been married for three years and there was "no dispute that [Tavares'] father had at all relevant times acknowledged his paternity." *In re Frederico Tavares*, No. A036684822, at \*2 (BIA, Sept. 30, 2008). Tavares timely appealed.

We will reverse the BIA.

II.

Under former 8 U.S.C. § 1432(a), Tavares must show that Manuel's paternity was not established by legitimation when his mother naturalized in 1990. If Tavares is correct,

naturalized under claim . . (3) of this subsection."

then absent legitimation by his father, Tavares obtained citizenship through his mother's

naturalization and thus could not be deported. The parties contest whether to apply Cape

Verde law or Massachusetts law as to whether Tavares was legitimated by his father as of

1990. Because Tavares was not legitimated under either sovereignty's law, we need not

choose which law governs.[2]

*A. Massachusetts law*

Two chapters of the Massachusetts General Laws are potentially relevant to the

question of legitimation: Chapter 209C, and Chapter 190, Section 7. Both provisions

require an act of acknowledgment by the father to establish legitimation. There is

insufficient evidence on the record to constitute an act of acknowledgment by Tavares'

father in this case.

Chapter 209C establishes a means for children born to parents who are not married

to "be acknowledged by their parents voluntarily, or . . . to have an acknowledgment or

adjudication of their paternity." Mass. Gen. Laws ch. 209C § 1. 209C requires an act of

acknowledgment by the father, or an adjudication of paternity. There is no evidence or

claim by either party that Manuel was adjudged to be the father of Tavares. Further, there

---

[2] The parties also debate the extent to which we must defer to the BIA's determination to look to Massachusetts law. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). However, the BIA merely assumed that Massachusetts law applied without recognizing that it was not the only place where the father and son had both resided. Under these circumstances, we owe no deference because the BIA never made any reasoned determination that Massachusetts, not Cape Verde, law should apply.

is insufficient evidence to conclude that Manuel performed an act of acknowledgment.

The only evidence the Attorney General identifies as an act of acknowledgment is the Cape Verde birth certificate. However, there is no evidence that Manuel ever knew his name was placed on the birth certificate. Manuel was married to another woman at the time. His name is typewritten in the form, as previously noted, and there was no signature on the birth certificate, or any other indication of acknowledgment. *Cf. Pina v. Mukasey*, 542 F.3d 5, 6-7 (1st Cir. 2008) (father signed son's birth certificate); *Lopes v. Downey*, 134 N.E.2d 131, 132 (Mass. 1956) (both parents acknowledged boy as their child in the birth record in the public registry in Cape Verde island).

Massachusetts Law Chapter 190 § 7 speaks of legitimation in the context of inheritance. For a child to be deemed legitimate for the purposes of inheritance, the father must have "acknowledged him as his child." Mass. Gen. Laws ch. 190 § 7. While a formal act of acknowledgment is not required, some evidence of acknowledgment is. *See Wrenn v. Harris*, 503 F. Supp. 223, 226 (D. Mass. 1980) (looking to "the probative value of any evidence, oral or written," explaining that "consistent oral testimony . . . especially when supported by documentary evidence" might be more helpful than one document with a signature on it, and finding ample evidence of acknowledgment). In this case, as explained above, there is insufficient evidence of acknowledgment by Manuel.

Because both Massachusetts statutes require some act of acknowledgment to establish legitimation by the father, and because the record discloses no evidence of any act of acknowledgment, we conclude that Tavares has not been legitimated under

6

Massachusetts law.

*B. Cape Verde*

Petitioner asserts, and the government does not refute, that Tavares was not legitimated by his father under Cape Verde law. The BIA does not discuss the question of whether Cape Verde law legitimates Tavares. Since Cape Verde was a province of Portugal and under Portuguese law when Tavares was born, the parties appear to agree that Portguese Civil Code Article 119 ("Code") applies in this case. The Code states that a marriage between two parents legitimates children born prior to the marriage if the children are recognized (1) by the father and mother "on registering the marriage;" (2) "at the time of their births were recorded;" (3) in a will or public document; or (4) via judicial action and judgment.

Tavares' parents' marriage had not been recognized under Cape Verde law as of 1990. Further, the mechanisms for recognition of a child suggest a formal process, and there is no evidence of formal recognition in this case. There is no indication that Manuel Tavares formally recognized Tavares when Tavares' birth was recorded or in any will or other public document. Nor was there a judicial action or judgment. Therefore, Tavares was not legitimated under the laws of Cape Verde.

### III.

Because Tavares had not been legitimated by his father as of 1990, and because he meets the other criteria for nationalization under former 8 U.S.C. § 1432(a), Tavares derived citizenship through his mother and became a U.S. citizen in 1990.

We will REVERSE the determination of the BIA, and ORDER that Tavares, as a United States citizen, is not subject to removal.  Accordingly, the proceeding to remove Tavares is terminated.